## PEOPLES LIFE INS. CO. v. O'HARA.
### No. 11640.

Court of Civil Appeals of Texas. Dallas.
April 25, 1936.

Rehearing Denied May 23, 1936.

Brame & Brame, of Sherman, for appellant.

Webb & Webb, of Sherman, for appellee.

BOND, Justice.

On August 13, 1924, Peoples Life Insurance Company, of Frankfort, Ind., issued on the life of Earl W. O'Hara a $3,000 life insurance policy, payable to his wife, if living, otherwise to his executors, administrators, or assigns. The premium on the policy was $54.90, payable annually, or $14.55, payable quarterly, in advance, with a 30-day period of grace. The insured paid the premiums as they became due for 4 years.

The policy provides that if, after 3 years of full payment of premiums, default is made, the company, unless otherwise directed, would grant a paid-up extension insurance for such length of time as is set out in an extension table shown in the policy. The table shows that at the end of 4 years the policy would be extended 3 years and 1 month; and, at the end of 5 years, would be extended 4 years and 2 months. The extension provision of the policy is as follows: "Non-Forfeitable Extended Insurance. In event of default in the payment of any premium when due, after premiums have been paid for three full years, the Company will without any action on the part of the insured, continue this policy in force as paid-up, nonparticipating term insurance without the right to loans, for the term shown in the table of options for the end of the last year for which full annual premiums have been paid; provided that if there be any indebtedness to the Company on account of or secured by this policy the amount of such extended insurance shall be reduced in the ratio of such indebtedness to the net value of such extended insurance."

At the end of the fourth year, August 13, 1928, the insured made default in the payment of the premiums then due, and, in accordance with the above provision, the policy lapsed and the insurance company continued the policy as paid-up term insurance for $3,000 for a period of 3 years and 1 month, which, according to the published extension table, would carry the insurance to September 13, 1931.

On October 19, 1928, the insurance company wrote a letter to the insured, carrying notice to him that the policy had lapsed and that it had been placed on the extended insurance basis for the full amount of the policy, to expire on September 13, 1931, because of the failure to pay the premium, and suggested a reinstatement of the policy; then, on January 15, 1929, the company wrote another letter to the insured, again extending the privilege

of reinstatement of the policy by the payment of the 1928 premium in cash, or by executing a note, if unable to pay in cash, and signing an application for reinstatement; the note and application were inclosed in the letter.

On January 17, 1929, the insured sent to the company the note for $54.90 to pay the past-due premium, and the application for reinstatement of the policy; and wrote the company to "straighten out this matter for me." The note inclosed is in words and figures as follows:

"$54.90  Frankfort, Ind., August 13, 1928.

"Peoples Life Insurance Company of Frankfort, Indiana, having extended for a period of eight months from date, the time for the payment of the annual premium on its Policy numbered 32490, I agree that I will then make said payment in the sum of Fifty-four and 90/100 Dollars at the Citizens Loan & Trust Co., of Frankfort, Indiana, with interest from date at the rate of six per cent. per annum; that, to secure said payment, said Company may now charge the amount thereof with interest during such extension period as a lien against said policy; that if said premium be not paid in accordance with this instrument, thereupon interest (on the amount of principal and interest unpaid) at said rate for the anniversary of said policy and thereafter interest (on the amount of principal and interest unpaid) at said rate annually in advance may be charged as a lien against said policy; and that, if the total liens to said Company against said policy shall at any time equal or exceed the loan value then available under said policy, the said policy shall, without further liability by said Company, be void and deemed surrendered to the Company.

"P. O. Address Sherman
"Box 326
"No. ——— Due April 13, 1929
                           "Earl W. O'Hara."

On January 23, 1929, in answer to the above letter, the company wrote to the insured that it had complied with his request, approved the application for reinstatement of the policy, accepted the note for the 1928 past-due premium, and stated that the policy would be continued in full force, in accordance with provision of the policy and the terms of the note.

On August 13, 1929, another premium became due; also the above note for the premium of August 13, 1928; whereupon the policy again lapsed and for the second time placed on extended insurance for a period of 4 years and 2 months, to October 13, 1933, limited, however, to a reduced insurance, as provided by the above-quoted extension provision of the policy in the ratio of the lien indebtedness, evidenced by the note, to the net value of such extended insurance. The undisputed evidence shows that the net value of the $3,000 extended insurance for the term of 4 years and 2 months, at age of 34, being the age of the insured at the time of his death, is $101.85, and that this amount, figured in the ratio stated, presents a claim value of the policy in the sum of $1,286.01.

On May 29, 1931, Earl W. O'Hara, the insured, and his wife, Gladys Alto O'Hara, were both killed in an automobile accident in the state of Oklahoma. They both died within a short time after the accident; Mrs. O'Hara predeceased her husband. The policy became payable to the administrator of Earl W. O'Hara. Demand was made on the insurance company for the payment of the $3,000, and the company tendered the sum of $1,286.01, the amount of the extended insurance, which is calculated on the ratio of the amount of the note and interest, $58.19, to the net value of such extended insurance, $101.85, expressed as a decimal, .57133. Figuring the .57133 off the sum of $3,000, $1,713.99, leaves the amount tendered by the insurance company and placed in the registry of the trial court.

On trial to the court without a jury, judgment was entered in favor of the appellee against the appellant for the full face value of the policy, $3,000, with 6 per cent. interest thereon, 12 per cent. penalty, and $500 attorney's fees, aggregating the sum of $4,220.

Appellee contends that the extended insurance, effective September 13, 1928, for default in payment of 1928 premium, providing for a claim to the full face value of the policy to September 13, 1931, was not abrogated in any wise by the subsequent agreement of the parties evidenced by the above-recited correspondence, note for the past-due premium, and the application for reinstatement of the policy. This contention is based on the ground that life insurance companies cannot legally reinstate policies of insurance which had lapsed for default in payment of premium, without the payment of the pre-

mium in cash; and cannot charge against the reserve of a life policy a note given in payment of premiums, notwithstanding the contract of the parties. Therefore the evidence adduced does not constitute a reinstatement of the policy of insurance, and the note given by the insured does not constitute an indebtedness against the policy such as would give effect to appellant's right to discount the face of the policy by reason of such indebtedness. This being true, the policy was in full force and effect for the full amount at the time of the death of the insured. We do not agree with appellee's contention.

Article 4732, R.S.1925, subd. 3, provides: "That the policy, or policy and application [of life insurance], shall constitute the entire contract between the parties"; and the policy in question provides, in effect that, if the policy lapsed for nonpayment of premiums, it will be revived by payment of arrears of premium, with interest, in cash; and, furthermore, the policy provides for a secured loan on the policy, as follows: "Cash Loans. After three full years' premiums have been paid the Company will loan, within six months of date of written application therefor and while this policy is in force, upon the sole security hereof any sum not in excess of that stated in the Table of Options to be loaned at the end of the current policy year plus the reserve on any additions hereto; provided that there shall first be deducted from such loan value any existing indebtedness on or secured by the policy and any unpaid balance of the current year's premium, and that interest at the rate of six per cent. per annum on the total amount of the loan be paid in advance to the end of the current policy year and that this policy be assigned to the Company. Failure to repay any such loan or to pay the interest thereon shall not avoid this policy unless the total indebtedness to the Company hereunder shall equal or exceed such loan value at the time of such failure, nor until thirty days after notice shall have been mailed by the Company to the last known address of the insured and to the assignee, if any, if such assignee has notified the Company of his address."

We think that, when the insurance company accepted the note executed by the insured, instead of cash, it was nevertheless the payment of the premium in arrears, and, with the insured's application for reinstatement, the policy was reinstated, thus placing it on the full face value for another year; and, the note providing that the "company may now charge the amount thereof with interest during such extension period as a lien against said policy," the insured became indebted to the company with a lien against the policy, thereby reducing the amount available for extension insurance in the ratio as stated in the policy. There is nothing in the subsequent negotiations between the insured and the insurance company that contravenes the insurance statutory laws of this state, and we fail to see how the lien indebtedness on the policy is inhibited by any provision of the policy.

In the case of Pacific Mutual Life Ins. Co. of California v. Thurman, 89 S. W.(2d) 202, 203, an opinion by the Commission of Appeals, adopted by the Supreme Court, the court quoted with approval the holding in the case of State Mutual Life Ins. Co. v. Rosenberry (Tex. Com.App.) 213 S.W. 242, viz.: "But aside from these considerations, the extension agreement represented by the note was binding upon the insurance company, regardless of whether it violated either or both of the statutory articles invoked. American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397. And if the insurance company was bound, then clearly the insured was bound also. If the latter is permitted to invoke the extension agreement, and avoid the consequences of lapse by virtue of failure to pay the premium in accordance with the terms of the policy, the insured must take the extension agreement charged with its burdens as well as clothed with its benefits. If held valid for one purpose, it must be held valid for all purposes. If void as to the obligations imposed on the insured, it is void as to the benefits accruing to the insured." Also in the course of the opinion the court says that, where premium note provides that it shall constitute an indebtedness on the policy, the insurer could properly charge such note against the reserve, thereby reducing the amount available for purchase of extended insurance, and that the provision of article 4732, supra, which requires the policy to contain the entire contract between the parties, has no application to agreements made subsequent to the issuance of the policy. See, also, Texas Life Ins. Co. v. Cork (Tex.Com.App.) 89 S.W.(2d) 779.

Therefore we conclude that the amount of the extension insurance, effective September 13, 1929, enforceable at the time of the insured's death, was by the expressed terms of the policy and the premium note reduced in the ratio as provided in the quoted extension clause of the policy, and that the trial court should have rendered judgment in favor of the appellee against appellant for only the amount of the money tendered and deposited in the registry of the court.

The judgment of the trial court is reformed, allowing appellee judgment for the sum of $1,286.01, the money now on deposit in the registry of the court; and, as reformed, the judgment is affirmed. All costs of this appeal and in the court below are taxed against the appellee.

Reformed and, as reformed, affirmed.