PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA
v. MERRITT B. THURMAN, JR.

No. 6448. Decided January 8, 1936.
(89 S. W., 2d Series, 202.)

*Thompson, Knight, Baker & Harris,* and *Dwight L. Simmons,* all of Dallas, for plaintiff in error.

The Court of Civil Appeals erred in holding that the insurance company had no right to charge the premium note against the reserve of the policy and thereby reduce the amount of the reserve which otherwise would have been available for the purchase of extended insurance. Occidental Life Ins. Co. v. Jamora, 44 S. W. (2d) 808; Pilot Life Ins. Co. v. Owen, 31 Fed. (2d) 862; French v. Columbia Life & Tr. Co., 156 Pac., 1042; 2 Cooley's Briefs on Insurance (2d Ed.) 1484.

*Sanders & McElroy,* of Center, and *C. A. Lord,* of Beaumont, for defendant in error.

*Seay, Seay, Malone & Lipscomb,* of Dallas, *Williams, Williams, McClellan & Lincoln,* of Waco, filed briefs as amici curiae.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Defendant in error, Merritt B. Thurman, Jr., sued the Pacific Mutual Life Insurance Company of California, plaintiff in error, on a $2,000.00 life insurance policy, and upon trial before the court without a jury, recovered judgment against the Company. The Court of Civil Appeals affirmed the judgment. 55 S. W. (2d) 1079.

The policy sued on was issued on the life of Merritt B. Thurman, Sr., October 1, 1924. The insured died September 27, 1929. The Company's position is that the policy had lapsed prior to that time for non-payment of premium on October 1, 1927.

The first two annual premiums due October 1, 1924, and 1925, respectively, were paid in cash. The third, due October

1, 1926, was settled for with a note obligating the insured to pay the Company on April 1, 1927, the amount of the premium ($60.66) with interest at the rate of six per cent per annum from date; and reciting that "This note is given for the annual premium due October 1, 1926, on Policy No. 55474 issued on the life of Merritt B. Thurman, whereunder said Company is the insurer, and shall be considered an indebtedness on and secured by said policy."

The note and interest thereon were never paid; nor was any premium paid or setttled for after the third, for which the note above described was given.

The policy provides that after it shall have been in force three full years the insured may elect, within three months after default in payment of the premium, but not later, any one of three options. The first two relate to "cash surrender value" and "paid-up endowment insurance," respectively, and are not material here, for the reason that the insured did not elect to avail himself of either. The third option, which relates to "paid-up term insurance," and which the policy provides may automatically become in force, provides that the insured may "have the insurance for the face amount of this policy, less any indebtedness hereon to the Company, continued in force from date of default for such term as is hereinafter provided, but without the right of loans."

The Court of Civil Appeals correctly states the question presented is whether the Company had a right to charge the premium note against the reserve in the policy and thereby reduce the amount of the reserve which would otherwise have been available for the purchase of extended insurance. Affirmance of the trial court's judgment was predicated upon the holding that the Company had no authority to charge the note against the policy reserve.

■ The court erred in so holding. The note for the third annual premium signed by the insured constituted by its own terms, "an indebtedness on and secured by said policy."

In Amicable Life Ins. Co. v. White, 38 S. W. (2d) 860, cited by the court in support of its holding, the premium note did not provide that it should constitute an indebtedness on the policy and be secured thereby. Futhermore the decision in the White case is predicated upon the proposition that Article 4732, R. S., 1925, which provides that the policy and application shall constitute the entire contract between the parties, renders ineffective the provision of the note making it an in-

debtedness on the policy. The provision referred to is part of an agreement made subsequent to the issuance of the policy, and neither the provision of Article 4732, R. S., 1925, nor the similar provision of Article 4953 (now 5050), both of which require the policy to contain the entire contract between the parties, has application thereto. State Mutual Life Ins. Co. v. Rosenberry, (Com. App.) 213 S. W., 242; Southland Life Ins. Co. v. Hopkins, (Com. App.) 244 S. W., 989.

In the case last cited the court after approving the holding in the Rosenberry case to the effect that Article 4953 has no application to agreements between insurer and insured made subsequent to the issuance of the policy, says:

"But aside from these considerations, the extension agreement represented by the note was binding upon the insurance company regardless of whether it violated either or both of the statutory articles invoked. Ins. Co. v. Tabor, 111 Texas, 155, 230 S. W., 397. And if the insurance company was bound, then clearly the insured was bound also. If the latter is permitted to invoke the extension agreement, and avoid the consequences of lapse by virtue of failure to pay the premium in accordance with the terms of the policy, the insured must take the extension agrement charged with its burdens as well as clothed with its benefits. If held valid for one purpose, it must be held valid for all purposes. If void as to the obligations imposed on the insured, it is void as to the benefits accruing to the insured."

To the same effect are the holdings in Toole v. National Life Ins. Co., 169 Wash, 627, 14 Pac. (2d) 468, and Diehl v. American Life Ins. Co., 204 Ia., 706, 213 N. W., 753, 53 A. L. R., 1528.

The insurer should not be required to treat the note as cash to build up the policy and keep it in force, unless the insured, upon non-payment thereof, be required to observe his contractual obligation to treat it as a charge against the policy; nor should it be rendered more difficult for policy holders to preserve their insurance by holding ineffective the contracts of the parties made for that purpose.

In the case last cited the Supreme Court of Iowa in construing the sections of the Iowa Code prohibiting the making of an insurance contract other than as plainly expressed in the policy, says:

"The statute now under consideration does not in terms apply to or prohibit the making of supplementary or later modifying contracts between the company and the insured not contemplated when the policy was issued. We cannot conceive of

its being against public policy or contrary to the terms or purpose of the statute to permit an insurance company to grant an extension to a policy holder by whom through misfortune or otherwise the making of prompt payment of premium at the stipulated time may be inconvenient or impossible. Such extensions, in many cases at least, save the insurance to the policy holder."

See also Wastun v. Lincoln Natl. Life Ins. Co., etc., 12 Fed. (2d) 422; Fidelity Mutual Life Ins. Co. v. Price, 117 Ky., 25, 77 S. W., 384; Pacific Mutual Life Ins. Co. of California v. Davin, 5 Fed. (2d) 481; Hawthorne v. Bankers Life Ins. Co., 52 Fed. (2d) 309; Alexander v. Northwestern Mutual Life Insurance Co., 290 S. W., 452.

■ It appears from the terms of the policy in the present case that it was not in force on the date of the death of the insured, unless by virtue of the extended insurance provisions. Defendant in error offered no evidence other than the policy itself to show that extended insurance was in force at that time. The policy contains a table of cash loan and non-forfeiture values, in part as follows:

| End of Year | Cash Loan Value or Cash Surrender Value | Paid-Up Endowment Insurance | Paid-Up Term Insurance | | |
|---|---|---|---|---|---|
| | | | Years | Days | Cash |
| 3 | 98 | 202 | 5 | 184 | 0 |

The policy further provides, however, that:

"The values in the table computed as hereinbefore provided, are guaranteed on the condition that the policy shall have been in force and the premiums paid in full to the end of the year stated, *and that there should be no indebtedness hereon to the Company.*" (Italics ours).

As there was an indebtedness on the policy evidenced by the note of the insured, the table above set out was inoperative to show that after lapse the insurance was continued in force.

The policy makes provision for computing the terms for which paid-up insurance may be extended. The policy after stating the manner of ascertaining the cash surrender value which is based on the policy reserve less a maximum surrender charge, provides that any indebtedness thereon to the company shall be deducted from the cash surrender value; and that the term of the paid-up insurance shall be such as the amount of the cash surrender value reduced by any indebtedness that may be on the policy to the company, will purchase when ap-

plied as the single net premium (with interest at $3\frac{1}{2}$ per cent per annum) at the attained age of the insured.

Defendant in error appears to have rested his case on the sole proposition that the premium note was not a charge against the policy. This is reflected in the Court of Civil Appeals' statement that "If the note was properly charged against the reserve of the policy, then the policy was not in effect on the date of the insured's death, but if it could not be so charged, the policy was in force." Plaintiff in error offered to show by actuarial testimony the amount and terms of paid-up insurance represented by the policy after October 1, 1927, and to show the expiration of such term prior to the death of the insured. Defendant in error interposed objection, which was sustained by the court, to the effect that the policy was the best evidence and that the effect of the testimony would be to construe the contract.

Defendant in error having failed to prove, and the evidence failing to show, that the policy was in force at the time of the death of the insured, or that the amount of the cash surrender value of the policy extended and applied as provided therein was sufficient to purchase extended insurance for a term extended to the date of the insured's death, the trial court should have rendered judgment in favor of the company.

The judgments of the trial court and Court of Civil Appeals are reversed and the judgment is here rendered for plaintiff in error.

Opinion adopted by the Supreme Court January 8, 1936.