## HUFF v. SOUTHWESTERN LIFE INS. CO

### No. 1556.

Court of Civil Appeals of Texas. Eastland.

May 22, 1936.

Rehearing Denied June 26, 1936.

Grady Owen, of Eastland, for appellant.

Hamilton, Lipscomb & Wood, of Dallas, for appellee.

LESLIE, Chief Justice.

The plaintiff, Viola Huff, as beneficiary, instituted this suit against the Southwestern Life Insurance Company to recover on a policy of insurance for $1,500, issued to her deceased husband, Andy Huff. The company answered by general demurrer and general denial. The trial was before the court without a jury, and resulted in a judgment in favor of the defendant. The plaintiff appeals.

The policy was issued to Andy Huff on July 6, 1926, and he paid all premiums coming due thereon to and including October 6, 1928, a period of 2¼ years. This carried the policy in force to January 6, 1929. The quarterly premiums due on the last date and subsequent thereto were not paid in cash when due and within the grace period. The company, acting under the automatic premium loan provision of the policy, paid the premium due January 6, 1929, and those due each quarter thereafter to, but not including, April 6, 1930 (1¼ years). On this last date, the cash value of the policy, in the absence of any indebtedness resting against the same, was $46.50, and the amount theretofore advanced by the insurance company in the payment of premiums on said policy, together with interest thereon in advance at the rate of 6 per cent. per annum, amounted to the sum of $45.71. Hence, on said date (April 6, 1930), 79 cents was all that remained of the cash value of the policy applicable to premiums falling due.

The only question in the case is as to whether the policy had lapsed at the time of Andy Huff's death on December 2, 1932. The appellant insists it had not so lapsed, and bases the proposition on the contention to the effect that where a life insurance policy contains a provision for automatic premium loans and for automatic extension benefits, the company issuing such policy does not have the legal right to deduct a premium loan advancement from the legal reserve value of the policy in such manner as to reduce the term of extended insurance provided for in the policy. Further, that the provisions of the policy evidence that it was the intention of the parties to this contract that by virtue of the automatic premium loan feature the insured would have exactly the same right under the policy when the premiums were advanced by reason of such provision as he would have if he had paid the premiums in cash, subject only to have the amount of such premiums advanced deducted from the total amount payable upon any final settlement of the policy. Stated somewhat differently, it is contended that "in the very act of advancing the premium under the aforesaid automatic premium loan privilege, the insurance company depletes and destroys the only reserve fund that exists under the policy for the purchase of such extended insurance, and at any time in which the company would admit that there was a default in the payment of the premiums, the aforesaid legal reserve would have been completely exhausted and destroyed by such premium advancements and there would be nothing left with which to purchase said paid-up term insurance or extended insurance as it is commonly called."

Preliminary to the consideration of the controlling point in the case, the appellant directs attention to the well-recognized rules of construction applicable to insurance contracts: (1) That an insurance contract is strictly construed against the company writing the same; (2) that conditions of forfeiture contained in the policy must be construed strictly against the company; and (3) that in such cases the rules of construction require that every provision of the insurance contract shall be given effect, if possible.

■ These fundamental rules are stated and applied by the authorities generally. First Texas Prudential Ins. Co. v. Ryan, 125 Tex. 377, 82 S.W.(2d) 635,; Baker v. Liverpool, etc., Ins. Co. (Tex.Civ.App.) 275 S.W. 316; American Nat. Ins. Co. v. Jones (Tex.Civ.App.) 83 S.W.(2d) 428; Federal Life Ins. Co. v. Raley (Tex.Civ. App.) 81 S.W.(2d) 220; Mitchell v. Southern Union Life Ins. Co. (Tex.Civ.App.) 218 S.W. 586; American Nat. Ins. Co. v. Chavey, 185 Ark. 865, 50 S.W.(2d) 245; Wolff v. National Liberty Ins. Co. (Ark.) 83 S.W.(2d) 836. But where the provisions of the contract are clear and unambiguous, and the words thereof used in their ordinary and usual sense, there is no occasion for invoking rules of construction. In fact, it has been held that rules of construction furnish no warrant for avoiding hard consequences by importing into the contract an ambiguity which otherwise would not exist, and that such rules may not be used to force unusual and unnatural meanings from plain words. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416.

■ We discover no ambiguity, uncertainty, or inconsistency in the provisions of the policy here involved. This is reflected by frequent judicial considerations given them by the appellate courts of this and other jurisdictions. It only remains to determine the legal effect of such provisions under the undisputed facts of this case.

The pertinent portions of the policy are as follows:

"I. Premiums. * * * Except as herein otherwise provided this policy shall lapse in the event of non payment of any premium or installment thereof. * * *

"IV. Loan and Non Forfeiture Provisions: Loans . * * * Automatic Premium Loans.—If at any time after the expiration of the second policy year and while this policy is in full force, any premium or installment of premium shall not be paid or settled in any other way within the time allowed for its payment, the company, unless otherwise instructed in writing by the insured, will forthwith advance the amount of such premium or installment of premium, with interest thereon at the rate of 6% per annum, payable in advance, as a loan against this policy, provided the loan value hereof shall be sufficient to secure such loan with any other existing indebtedness and interest in advance on the total debt until the next premium or installment thereof becomes due. Premiums falling due thereafter will in like manner be so advanced and paid by the company and this policy so continued from time to time as long as the loan value hereof, after deducting all indebtedness and interest, is sufficient to pay a quarterly premium on this policy. At any time while this policy is thus continued in force, the payment of premiums may be resumed by the owner of the policy without medical re-examination, and all rights of the insured under this policy will remain in full force and effect, subject only to the indebtedness hereon, the same as if the premiums had been paid in cash by the insured. In any settlement of the policy the indebtedness to the company hereon shall be a first lien in priority to the claim of any beneficiary or assignee. Such loan may be repaid at any time, but failure to repay it shall not avoid the policy until the total indebtedness thereon shall equal or exceed the loan value, in which case this policy shall automatically cease and determine.

"Other Non Forfeiture Provisions: If default shall be made in the payment of any premium or premium note after the payment of premiums for three full years (there being no default if such premium has been advanced under the automatic Premium Loan Privilege above described) then

"(Automatic Feature)—1. Without any action of the part of the Insured this policy shall be extended as a policy of paid-up term insurance (without loan or surrender values) for an amount equal to the principal sum insured hereunder less all existing indebtedness to the company on the policy, the term of which will be fixed as follows:

"From the net value of the Paid-up Term Insurance stated in column 2 of the table on the third page hereof shall be deducted all existing indebtedness to the company on the policy, and the balance, if any, when converted into Paid-up Term Insurance, for the amount above provided for, shall fix the term of the Paid-up Term Insurance available. If the balance of such net value is greater than the net single premium necessary to extend the policy for the principal sum insured less indebtedness to the end of the Endowment Period, the excess shall be converted into a Survivorship Benefit. Survivorship Benefits shall be payable in cash to the insured, if living at the end of the Endowment Period.

"Legal Surrender Option * * *

"The Reserves on this policy and all calculations necessary to ascertain net values and non forfeiture values shall be based on American Experience Table of Mortality and interest at the rate of three and one-half per cent per annum."

Paragraph IV (Continued), and under the heading "Table of Loan and Non Forfeiture Values," further stipulates that

"If there be no indebtedness upon the Policy, the Loan and Non-Forfeiture values available thereunder will be as follows:

| Number of Years Premiums Paid | Column 1 Loan Value Cash Value | Column 2 Paid-up Term Insurance | | Column 3 Paid-up Insurance |
|---|---|---|---|---|
| | | Years | Months | |
| 1 | 13 | See Note | | Below |
| 2 | 22 | See Note | | Below |
| 3 | 33 | 2 | 1 | 84" |

The above table shows the loan or cash value of the policy and the paid-up term insurance at the end of the third year and subsequent thereto. The options and nonforfeiture provisions, other than the automatic premium loan provision, became effective only after the payment of premiums for three years. That point is plain from the following provision of the policy: "Note:—Until three full years premiums have been paid the values stated in column 1 can be used only in payment of annual premiums on this Policy and will be so applied only in the manner described in paragraph entitled 'Loans' on the second page hereof and on payment to the Company of any excess of

annual premium over loan or cash value. * * *"

To summarize briefly: The insured paid no premiums accruing subsequent to October 6, 1928, but the company, under the automatic premium loan provision of the policy, advanced in behalf of the insured, as a loan on the policy, premiums, which with interest as therein provided, amounted to $45.71 on April 6, 1930, the first date on which a premium fell due and was not paid by either the insured or the company. In the absence of any indebtedness against the policy, at that date the cash value thereof would have been $46.50, but that value to the extent of $45.71 had been absorbed in the payment of premiums by the company under the automatic provision for the payment of the same. The 79 cents remaining was insufficient to purchase extended insurance for as much as one month, or beyond the grace period. It follows that the policy lapsed at the end of the grace period for the payment of the premium that matured April 6, 1930, and there was no insurance in force at the time of the death of Andy Huff, December 2, 1932, nearly two years later. The following authorities so hold: Pacific Mut. Life Ins. Co. v. Merritt B. Thurman, Jr. (Tex.Com. App.) 89 S.W.(2d) 202, 203; Southland Life Ins. Co. v. Hopkins (Tex.Com.App.) 244 S.W. 989; Meserole v. Southwestern Life Ins. Co. (Tex.Civ.App.) 203 S.W. 1161. The case last cited differs from the instant one only in names, dates, amounts, etc.

It will be observed that the policy provides that, "Except as herein otherwise provided, this policy shall lapse for non payment of any premium or installment thereof," and further under the "Settlement Provision" thereof that: "Upon any settlement under this policy all indebtedness to the company on the policy and all indebtedness of the holder of the policy to the company and also any unpaid portion or installment of the full premium for the current policy year shall be deducted from any sum payable by the company."

Since all options and nonforfeiture provisions, other than the automatic premium loan provision, became effective only after payment of premiums for three full years, and since the insured actually paid premiums for only 2¼ years, his policy would have automatically become null and

void at the end of the grace period for the payment of the premium due January 6, 1929, had it not been for the operation of the automatic premium loan provision. By that provision the company agrees that if at any time after the expiration of the second year, and while the policy is in full force, any premium or installment of premium shall not be paid or settled in any other way within the time allowed for its payment, the company, unless otherwise instructed in writing by the insured, will forthwith advance the amount of such premium or installment of premium, with interest thereon at the rate of 6 per cent. per annum, payable in advance, as a loan against the policy, provided the loan value of the policy shall be sufficient to secure such loan with other existing indebtedness and interest in advance on the total debt until the next premium or installment thereof becomes due. Such advancement of premium would, of course, become a loan against the policy, and in any settlement a first lien thereon.

Obviously, if the appellant or beneficiary must assert the validity of that portion of the contract which binds the company to advance the cash surrender value of the policy (which is the reserve less a surrender charge not exceeding 2½ per cent. of the face of the policy) in the automatic payment of premiums, the beneficiary could not then deny the validity of the other portion of the contract which makes such advancement an indebtedness against the policy with direct effect upon the provision for extended term insurance. As said in the recent case of Pacific Mut. Life Ins. Co. v. Thurman, supra: "The insurer should not be required to treat the note as cash to build up the policy and keep it in force, unless the insured, upon nonpayment thereof, be required to observe his contractual obligation to treat it as a charge against the policy."

The appellant in presenting the contention that the principal of the insurance was continuous in effect for a period of two years and eleven months after April 6, 1930, thereby disregarding the fact that the loan or cash value had been practically absorbed by the appropriation of $45.71 thereof for the payment of premiums under the automatic premium loan provision of the policy, completely ignores that provision of the policy preceding the table of "Loan and Non-Forfeiture Values" and reading as follows: "If there be no indebtedness upon the policy, the loan and non-forfeiture values available thereunder will be as follows:"

In making such contention, the appellant also overlooks the further significant provisions of the policy which set out how the extended term of insurance shall be fixed, and which read in part as follows:

"From the net value of the Paid-Up Term Insurance stated in column 2 of the table on the third page hereof shall be deducted all existing indebtedness to the company on the policy, and the balance, if any, when converted into Paid-Up Term Insurance, for the amount above provided for, shall fix the term of the Paid-Up Term Insurance available. * * *"

"The reserves on this policy and all calculations necessary to ascertain net values and non-forfeiture values shall be based on American Experience Table of Mortality and interest at the rate of three and one-half per cent per annum."

From these and other provisions of the policy herein set out, it is clear that the "balance" remaining of the net value of the paid-up term insurance after the deductions provided for in the policy was insufficient to fix a term of paid-up term insurance of sufficient duration to extend to and include the date of Andy Huff's death. That is clear from the undisputed facts. The language of the policy does not permit the cash value thereof to be used in behalf of the insured in the payment of premiums due thereon until such cash value is exhausted, and when so exhausted, to be again used in his behalf to purchase extended insurance.

The appellant's propositions are overruled, and for the reasons assigned, the judgment of the trial court is affirmed.