AETNA LIFE INSURANCE COMPANY V. LAURA M. REED.

No. A-3585. Decided July 2, 1952.
Rehearing overruled October 1, 1952.
(251 S. W., 2d Series, 150.)

*Boyle, Wheeler, Gresham & Davis* and *J. D. Wheeler,* all of San Antonio, for petitioner.

The Court of Civil Appeals erred in holding that insured's death did not result from an aeronautic flight; in that the insured must have been the pilot of the plane and not just a passenger and that there was evidence to support the theory that insured's death was not the result of an aeronautic flight. Maryland Casualty Co. v. Hudgins, 97 Texas 124, 76 S.W. 745; Continental Casualty Co. v. Wade, 101 Texas 102, 105 S.W. 35; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 76 L.Ed. 416.

*Coleman Gay,* of Austin, for respondent.

The lower courts were correct in holding that a passenger on a plane is not on an aeronautic flight, and there was sufficient evidence to support such theory. Clapper v. Aetna Life Ins. Co., 157 Fed. 2d 76; Faron v. Penn. Mut. Life Ins. Co., 179 Fed. 2d 480; Jester v. Lancaster, 266 S.W 1103.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

On May 22, 1922, the petitioner, Aetna Life Insurance Company, issued a life insurance policy for $25,000 to David C. Reed, with Laura M. Reed, respondent, as beneficiary. A policy rider provided for double indemnity "If the death of the insured * * * results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means * * *, and *if such death does not result * * * from an aeronautic flight*" (Italics ours).

On May 2, 1948, Mr. Reed, his business associate, Gilbert C. Wilson, and that latter's accountant, Cloise A. King, left Dallas for Washington, D. C., in a 4-passenger cabin plane, with Wilson, who was a licensed pilot, operating the plane. Mr. Reed was not an airplane pilot, had never tried to operate a plane and had nothing to do with the operation of the plane on the flight in question; he was admittedly only a passenger. While this plane was in flight over Culpepper, Virginia, it crashed to the ground, killing Reed as well as Wilson and King.

Petitioner paid Mrs. Reed $25,000 as provided in the policy for the death of Mr. Reed, but refused to pay an additional $25,000 for accidental death, contending that his death resulted from an aeronautic flight within the exception to the double indemnity rider above quoted. Respondent contended that before the exception could be applied it would have to be proved that Mr. Reed was in control of, and operating, the plane when it crashed.

Petitioner filed suit against respondent for a declaratory judgment construing the double indemnity exception to mean "a death resulting from riding in an airplane irrespective of whether the insured is participating in the control of said airplane or not."

Respondent filed a cross action praying recovery of the $25,000 as double indemnity.

The trial court found that the death of Mr. Reed was not the result of an aeronautic flight, and rendered judgment for respondent, which was affirmed by the Court of Civil Appeals, Associate Justice Hughes dissenting. 246 S. W. 2d, 311.

The language under consideration is one of many variously expressed exceptions which have appeared in double indemnity

insurance policies written in this country with the rise and development of aviation. In the Annotation following King v. Equitable Life Assurance Society of the United States, 232 Iowa, 541, 5 N.W. 2d 845, 155 A.L.R., 1022, 1035, are listed and quoted 29 clauses attempting to provide against double indemnity for death of the insured under circumstances similar to those surrounding Mr. Reed's death; and the annotation shows a surprising lack of unanimity and clarity in their construction by the courts of our several jurisdictions. Obviously, we cannot review all of those decisions, and any attempt to reconcile them would be futile.

When the Reed policy was written two decisions upon which petitioner relies were in the books. They are Bew v. Travelers' Ins. Co., 95 N.J.L. 533, 152 Atl. 859, 14 A.L.R., 983, and Travelers' Ins. Co. v. Peake 82 Fla. 128, 89 So., 418. In those cases the exception was "while participating in or in consequence of having participated in aeronautics." In both cases the deceased was a passenger for hire in an airplane piloted by another and it was held that double indemnity could not be allowed because, as stated in the Peake case, "Policies of insurance are designed to secure indemnity to the insured for losses or injuries stated in the policy, and the terms used should be construed as to effectuate the purpose designed, ambiguous provisions being fairly construed in favor of the injured, but persons sui juris are bound by their valid contracts, and where a particular risk is expressly and clearly excepted from the risks assumed by the insurer, the courts have no power to enforce indemnity for losses or injuries resulting from such excepted risks as expressed by the indemnity contract contained in the policy." Then it is held that a "passenger in an airplane flying in the air, whether he takes part in the operation of the airplane or not, is 'participating in aeronautics' within the intent and meaning of the provision specially excepting such a risk from the indemnity contract contained in the policy." Since they dealt with an exception different in language from that in the Reed policy, the Bew and Peake cases are not necessarily decisive of our question but the principles there announced are persuasive.

What appears to be the only decided case in which the language of the exception is practically the same as that of the Reed policy is Clapper v. Aetna Life Ins Co., 157 Fed. 2d 76, a decision by the U. S. Court of Appeals for the District of Columbia. There petitioner was the insurer, and the policy provided for double indemnity if death of the insured "occurs * * *

from bodily injuries effected solely through external, violent and accidental means * * * (and) *not * * * from an aeronautic flight or submarine descent"* (Italics ours). The insured died when the plane in which he was riding as a passenger collided with another plane, fell into the sea, caught fire and sank. The court's reasoning is that the language of the policy "relieves the insurer of liability in consequence of death resulting from—an aeronautic flight. If the words used had been 'resulting from—a flight' the case would be simple, for it is obvious that the death of Mr. Clapper was in consequence of—a flight." Then it gives controlling force to the adjective *aeronautic*, pointing out that Webster's New International Dictionary defines the word *aeronautics* as "the science that treats of the operation of aircraft" and the word *aeronautic* as "pertaining to aeronautics or aeronauts". Then the court holds that since the flight, to be within the policy exception, must be one pertaining to the science of *operating* aircraft, a mere passenger is not included within the exception. The court further concludes, as did the Court of Civil Appeals in this case, that if its interpretation is subject to challenge, the same result would follow because the language of the exception is so ambiguous as to compel a decision in favor of the insured.

We have concluded that neither ground for the decision in the Clapper case is tenable, hence that we are not bound by it.

1 In the first place, as the opinion notes, Webster's New International Dictionary, 2d Edition, defines *aeronautic* as "Pertaining to aeronautics or *aeronauts*." But what the court overlooked is that the same authority defines an *aeronaut* as "One who operates an airship or a balloon; also one who *travels in an airship* or a balloon." (Italics ours). Under that definition, both the operator and the passenger in a flying plane must be regarded as on an *aeronautic flight*, under the terms of the Reed policy.

Moreover, under the language of the exception before us the double indemnity was not to be paid if Mr. Reed's death *resulted from* an aeronautic flight. Under the agreed facts, he was riding in a plane and died as a result of its falling. Therefore, it cannot be plausibly said that he did not die as the result of an aeronautic flight. Although he had no part in operating the plane, Mr. Reed, as a passenger, was taking part in its flight, hence it is clear to us that he died as a result thereof. To borrow the language of the Clapper case (substituting the name *Reed* for

*Clapper*), "It is obvious that the death of Mr. Reed was in consequence of a—flight." And it is equally obvious that it was in consequence of an *aëronautic* flight. It would be difficult indeed to imagine why the insurer would exempt itself from the hazard of death of operator of a flying plane and at the same time accept that hazard as to a passenger, when the danger to both is necessarily the same.

2   We think the intent of the parties in the use of the language is unmistakable, therefore that we cannot give it an opposite meaning under any theory of ambiguity. See Hall v. Mutual Benevolent Health & Accident Association (Civ. App.), 220 S.W. 2d 934, error refused, for an admirable statement of the rules of construction applicable here.

It follows that both judgments below are reversed and judgment is rendered for petitioner.

Opinion delivered July 2, 1952.

Chief Justice Hickman not participating.

Rehearing overruled October 1, 1952.