## AUTOMOBILE INS. CO. OF HARTFORD, CONN. v. DENNY et al.
### No. 14766.

United States Court of Appeals
Eighth Circuit.

July 30, 1953.

Rehearing Denied Sept. 2, 1953.

Douglas Stripp, Kansas City, Mo. (Watson, Ess, Whittaker, Marshall & Enggas, Kansas City, Mo., on the brief), for appellant.

David Skeer, Kansas City, Mo. (Barnett & Skeer, Kansas City, Mo., on the brief), for appellees.

Before GARDNER, Chief Judge, and SANBORN and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

Lewis E. Denny, Jr., and Vera Am. Denny, his wife, brought this action upon a "Missouri Personal Property Floater Policy" issued by The Automobile Insurance Company of Hartford, Connecticut, on June 11, 1949. The claim of the plaintiffs (appellees) was that 176 unset diamonds, which were stolen from their residence in Kansas City, Missouri, on November 7, 1951, while the policy was in force, were covered by it for full value as "unscheduled personal property." This the Company denied, asserting that by the terms of the policy these diamonds were "unscheduled jewelry," for the loss of which the liability of the Company was expressly limited to $250.00, and that it had paid that amount to the plaintiffs.

The case was tried to the court without a jury. The controlling issue was whether the stolen unset diamonds were, within the meaning and intent of the policy, "unscheduled personal property" or "unscheduled jewelry." The court determined that the diamonds were not "jewelry" at the time they were stolen. It awarded the plaintiffs judgment for $11,020.00 (which it found to be the value of the diamonds), upon the ground that the diamonds were "unscheduled personal property." The Company has appealed from the judgment.

There is virtually no dispute about the facts. The policy covered all risks of loss of or damage to personal property owned,

used or worn by the assured, Lewis E. Denny, Jr., or members of his family of the same household, except as otherwise provided. Under paragraph 3, "Amounts of Insurance," the policy provided:

"Insurance attaches only with respect to those items in this paragraph for which an amount is shown and only for such amount.

"Item (a) $10114.65   On unscheduled personal property, except as hereinafter provided.

"Item (b) $ 3194.50   On personal jewelry, watches, furs, fine arts and other property as per schedules attached hereto. Each item considered separately insured.

"Item (c) $ Nil   On unscheduled personal jewelry, watches and furs, in addition to the amount of $250.00 provided in paragraph 5 (b), against fire and lightning only."

Paragraph 5(b) appears under the caption "Limitations," and reads as follows:

"(b) As respects any one loss of unscheduled jewelry, watches and furs, the Company shall not be liable for more than $250.00 unless the loss is covered under Item (c) Paragraph 3, in which event the Company's liability for such loss is limited to the amount stated therein."

Since no amount of insurance was provided in Item (c) of paragraph 3, the diamonds, if they were "unscheduled jewelry" at the time of the loss, were covered by Item (b) of paragraph 5 to the extent of $250.00. If the diamonds were "unscheduled personal property," they were fully covered under Item (a) of paragraph 3, because on July 21, 1950, prior to the time of the loss, the amount of insurance under that item had been increased to $15,000.00, in order to provide $1,500.00 additional coverage on personal property in a summer place which the assured had recently acquired.

At the time the policy in suit was issued and at the time the amount of insurance under Item (a) of paragraph 3 was increased on July 21, 1950, written "Declarations of the Assured" as to the approximate values of the "unscheduled personal property other than jewelry, watches and furs" were attached to the policy. The "Declarations" of July 21, 1950, rather clearly indicate the kinds of personal property intended to be covered under that classification. These, together with their estimated values, were:

"(a)  Silverware and pewter............ $ 1,357.

(b)  Linens (including dining room and bedroom) ......... ......... $ 225.

(c)  Clothing (Men's, Women's, Children's) ............................ $ 2,005.

(d)  Rugs (including floor coverings) and draperies .................... $ 2,300.

(e)  Books ............................. $ 500.

(f)  Musical Instruments (including pianos) ........................... $ 300.

(g)  Television sets, radios, record players and records............. $ 700.

(h)  Paintings, etchings, pictures and other objects of art............... $ Scheduled

(i)  China & glassware (including bric-a-brac) ..................... $ 100.

(j)  Cameras & photographic equipment ............................. $ 600.

(k)  Golf, hunting, fishing and other sports & hobby equipment ...... $ 500.

(l)  Refrigerators, washing machines, stoves, electrical appliances and other kitchen equipment........ $ 1,700.

(m)  Bedding (including blankets, comforters, covers, pillows, mattresses, and springs)........ $ 425.

(n)  Furniture (including tables, chairs, sofas, desks, beds, chests, lamps, mirrors, clocks)......... $ 4,100.

(o)  All other personal property (including wines, liquors, foodstuffs, garden and lawn tools and equipment, trunks, traveling bags, children's playthings, miscellaneous articles in basement and attic) and professional equipment, if any, covered under paragraph 6 (b)................. $ 230.

                    Total        $15,042."

It is conceded that when the policy was written, the diamonds, which were then mounted in a bracelet belonging to the assured's wife and insured by her in another company, were not covered by the policy. It is also apparent from the record that the value of "unscheduled personal property," as declared by the assured, never included the value of the diamonds, and that the premium paid by the assured did not reflect the risk of their loss. The total value of "unscheduled personal property" was originally estimated at $14,449.50, when the amount specified in Item (a) of paragraph 3 was $10,114.65. Shortly after the issu-

ance of the policy, the amount of insurance under Item (a) of paragraph 3 was increased to $11,559.66, at which figure it remained until July 21, 1950, when it was increased to $15,000.00.

It is obvious that had the diamonds remained set in the bracelet, which was never insured by the Company, this controversy would not have arisen. But in October, 1950, the assured and his wife had a jeweler dismount the diamonds in order to use some of them in new items of jewelry to be made, namely, diamond earrings and a diamond ring for Mrs. Denny and a diamond ring for the assured. When these articles had been made, the assured brought them home with the dismounted diamonds which were left over. The diamonds, which were wrapped in tissue paper, were placed in a strong-box which was kept in the house and for which both the assured and his wife had keys. The last time Mrs. Denny saw the diamonds was November 1, 1951, when she put her earrings and a ring in the box and locked it. She and her husband left that evening for Florida, and, while they were away, someone entered their home, pried open the strong-box, took the earrings, the ring, and the diamonds, and nothing besides, and departed.

It is apparent that the dismounted diamonds were not scheduled in the policy or expressly covered by it due to a misunderstanding between the assured and his insurance broker. After the diamonds had been removed from the bracelet, the assured on October 20, 1950, telephoned the broker to cancel the insurance on the bracelet (which the assured had forgotten was not covered by the policy in suit) and to schedule the earrings and finger rings which had been made from some of the diamonds taken from the bracelet. The broker told the assured that the bracelet had never been covered by the policy. The assured informed the broker that there had been no loss, but that some things had been made out of diamonds taken from the bracelet and that loose stones were left, and asked, "What should I do with them?" The broker said, "Well, where do you have them?" The assured replied, "I have them in a safe deposit box." Thinking that the loose diamonds had been placed in a safety deposit vault at some bank, the broker said: "Well, there is no use spending your money, for instance [insurance], on those as long as you have them in the box, but as soon as you take them out of there you should let me know."

The basis for the District Court's conclusion that the diamonds ceased to be jewelry when they were removed from the bracelet, and that they were thereby transmuted into "unscheduled personal property" and thus brought within the coverage of the policy, is that they were no longer articles of personal adornment.

■ The theory that the dismounting of the diamonds from the uninsured and unscheduled bracelet reduced them to the status of "unscheduled personal property" seems to us logically untenable. Within the meaning of the policy, we think the diamonds were as much "unscheduled jewelry" after their removal from the bracelet as they were before.

■■ The rule for construing the provisions of an insurance policy has never been better stated than by Mr. Justice Sutherland in Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416:

" * * * It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Mutual Life Ins. Co. [of New York] v. Hurni [Packing] Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235; Stipcich v. [Metropolitan Life] Insurance Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have

used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 462, 463, 14 S.Ct. 379, 38 L.Ed. 231. * * *"

See, also, State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 627, 127 S.W.2d 675, 677; Hartford Accident and Indemnity Co. v. Federal Deposit Insurance Corporation, 8 Cir., 204 F.2d 933.

The District Court recognized that the words of the policy in suit were to be given their usual and ordinarily accepted meaning, but was of the opinion that the word "jewelry" as commonly understood and as used in the policy was limited to articles of adornment, and could not be taken to include diamonds after being dismounted from an article of jewelry.

Counsel have supplied us with definitions of the word "jewelry" taken from various dictionaries, and have cited cases thought to be indicative of the meaning of the word.[1] Since we are convinced that in the policy in suit the word "jewelry" was used in a broad sense and included mounted and dismounted diamonds, there is no point in discussing the cases referred to by counsel, none of which requires a different conclusion.

If the coverage under the policy had been $250.00 on "unscheduled personal property" and $15,000.00 on "unscheduled jewelry," can anyone believe that the plaintiffs would have asserted that the diamonds were not "jewelry" or believe that the Company could have escaped liability for the loss of the diamonds by insisting that when dismounted they had become "unscheduled personal property"?

The judgment appealed from is reversed, and the case is remanded with directions to dismiss the complaint.

[1.] Jewel Tea Co., Inc. v. Kraus, 7 Cir., 187 F.2d 278; Wagner v. Congress Square Hotel Co., 115 Me. 190, 98 A. 660, 662; In re Beckett's Estate, 169 Misc. 475, 8 N.Y.S.2d 24; Robbins v. Robertson, Collector, C.C.S.D.N.Y. 1888, 33 F. 709; Citroen v. United States, 2 Cir., 166 F. 693; Commonwealth v. Glover, 132 Ky.

588, 116 S.W. 769, 774; Cavendish v. Cavendish, 1 Brown's Ch. 467; to which may be added: Rubin v. Globe & Rutgers Fire Ins. Co. of City of New York, 119 Misc. 532, 196 N.Y.S. 657; Gross v. Globe & Rutgers Fire Ins. Co., 142 Misc. 918, 256 N.Y.S. 570.