**Harold L. BROWN, Appellant,**

v.

**INTERNATIONAL SERVICE INSUR-
ANCE COMPANY, Appellee.**

No. 7123.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 31, 1969.

Rehearing Denied Jan. 5, 1970.

Wagner & Woods, Houston, for appellant.

Fred L. Hartman, Houston, Heard L. Floore, and Richard U. Simon, Jr., Fort Worth, for appellee.

STEPHENSON, Justice.

This is an action brought by plaintiff upon defendant's Scheduled Property Floater Policy of Insurance. The parties submitted this case to the trial court as an agreed case under Rules of Civil Procedure, rule 263. Judgment was rendered that plaintiff recover $250.00, as shown below, and plaintiff appealed. The parties will be referred to here as they were in the trial court.

The agreed statement of facts showed the following in substance: One of the scheduled items listed in the policy of insurance was "One Gents' Diamond Ring Center diamond $1\frac{57}{100}$ carat, Blue white, 2 baguette Diamonds with 18 Kt. mounting." The limit of liability for this item stated in the policy was $2,000.00 After the policy of insurance sued upon became effective, the $1\frac{57}{100}$ carat center diamond was removed from the gentlemen's mounting and reset in a ladies' platinum four-prong mounting with two baguette diamonds. Thereafter, the $1\frac{57}{100}$ carat diamond was damaged in that it was chipped from its girdle to its cutlet. That the $1\frac{57}{100}$ carat diamond was the same diamond as originally insured. That such diamond had a reasonable value of $2,500.00 in the men's mounting and in the ladies' mounting. Both the men's mounting with the two baguette diamonds and the ladies' mounting with the two baguette diamonds had a reasonable value of $100.00 each. The reasonable value of the $1\frac{57}{100}$

carat diamond in its damaged condition was $735.00. The men's mounting with two baguette diamonds was not damaged.

The judgment entered in the trial court contained this paragraph:

"The Defendant is correct in its contention that when the diamond was removed from the man's mounting, as described in the insurance policy, and was mounted in a different mounting, it became an unscheduled item, and the Plaintiff is, therefore, entitled to recover $250.00."

We consider the plaintiff's points of error with the rules of law applicable to agreed cases before us. Both the trial court and this court are without authority to draw any inference or find any fact not embraced in the agreement unless as a matter of law such further inference or fact is necessarily compelled by the evidentiary facts agreed upon. Perry v. Aetna Life Ins. Co. of Conn., 380 S.W.2d 868 (Tyler, Tex.Civ.App., 1964, error ref. n. r. e.). There are no presumed findings in favor of the judgment. Strawn Independent School District v. Stuart, 21 S.W.2d 713 (Eastland, Tex.Civ.App., 1929), affirmed 36 S.W.2d 480 (Tex.Com.App., 1931).

We have concluded the trial court erred in denying plaintiff recovery under the policy for the damage to a scheduled item. Contracts of insurance are governed by the same rules as other contracts. First Texas Prudential Ins. Co. v. Ryan, 25 Tex. 377, 82 S.W.2d 635 (Tex.Com.App., 1935). The policy must be considered as a whole and effect be given to each part where reasonably possible. Where there is an ambiguity or uncertainty as to the meaning that construction must be given which is favorable to the insured. National Security Life & Cas. Co. v. Davis, 152 Tex. 316, 257 S.W.2d 943, 38 A.L.R.2d 764 (Tex. Sup., 1953). Contracts of insurance should receive a practical, reasonable and fair interpretation consonant with the apparent

object and intent of the parties viewed in the light of their general object and purpose. San Jacinto Title Guaranty Co. v. Lemmon, 417 S.W.2d 429 (Eastland, Tex. Civ.App., 1967, error ref., n. r. e.).

 We think a reasonable construction of this insurance policy indicates it was the clear intention of the parties to insure the 15⁷⁄₁₀₀ carat center diamond. The parties have agreed that the diamond damaged is the same diamond that was insured in this policy. A problem as to identification of an item to be insured could arise in many instances, and descriptive words must necessarily be used in the policy to be sure the insured and insurer have agreed upon the particular item covered. In this case, the policy under the heading "Scheduled Jewelry" described this diamond of a particular size as set in a gents' mounting with two baguettes. Removing this diamond from the gents' mounting and resetting it in the ladies' mounting did not alter the fact that the 15⁷⁄₁₀₀ carat diamond was still insured, and did not in any way increase the risk that defendant was taking. There is no provision in this policy that the diamond could not be reset, which the insurer could have written into its policy if that had been its intention. Assume a case similar to the present in which the insured reset his diamond into another gents' mounting with two baguette diamonds. Would the insurer still have made the same contention? Certainly the sex of the mounting could not in itself work a forfeiture of the coverage. The defendant accepted a portion of the $540.00 premium collected to insure the center diamond against damage and it would be unfair to the plaintiff to hold his protection forfeited because of the resetting, with no such provision written into the policy. There is no indication the premium would be any greater to insure a ladies' ring than a gentlemen's. The parties have agreed the 15⁷⁄₁₀₀ carat diamond had exactly the same value in both the ladies' and gentlemen's settings. The value of both mountings plus two baguette diamonds was agreed to be $100.00 and inconsequential in both instances.

The policy in the present case is easily distinguished from the policy in Automobile Ins. Co. of Hartford, Conn. v. Denny, 206 F.2d 401, 40 A.L.R.2d 865 (8th Cir., 1953) but the opinion is logical. In the Denny case, the insurance policy covered both unscheduled personal property and unscheduled jewelry. The trial court determined that a diamond in a bracelet at the time the policy was issued was not jewelry after being dismounted from the bracelet. The United States Court of Appeals for the 8th Circuit held it was jewelry and came under the policy provision for unscheduled personal jewelry, reversed the trial court's judgment and limited the recovery to the policy liability provision on "Unscheduled Jewelry" to $250.00. The reasoning in that case supports our view that the word "jewelry" in the instant policy under "unscheduled jewelry" was used in a broad sense, and included mounted diamonds and if a diamond was dismounted it still included that diamond.

 In an agreed case, it is the duty of this court to render such judgment as the trial court should have rendered. Hornsby v. Bartz, 230 S.W.2d 360 (El Paso, Tex.Civ.App., 1950, no writ). The parties agreed the center diamond had a value of $2,500.00 before it was damaged, and $735.00 after it was damaged. The difference of $1,765.00 is the amount plaintiff is entitled to recover, which is within the policy limit of $2,000.00.

The dissent in passing upon the amount of recovery treats the $2,000.00 shown by the policy to be "Limit of Liability" as if it were the agreed value of the diamond. The construction the majority places upon the $2,000.00 is that plaintiff may recover up to that amount according to the damage he has suffered. Using the strained construction that the dissent would impose in this case, if the agreed value of the diamond had been $4,000.00 and the difference in value before and after the damage had been $2,000.00, with a $2,000.00 limit of lia-

bility, the dissent would hold plaintiff could recover nothing.

Reversed and rendered.

KEITH, Justice (dissenting).

I respectfully dissent from an opinion which completely rewrites an unambiguous insurance policy, after a loss, under the guise of construing the policy. If plaintiff is to recover, he should do so upon the basis of the policy issued to him, not upon the one which this court has rewritten.

The policy involved is a "scheduled property floater policy," issued on March 30, 1965, for a three year period, and the very first printed line thereof contains this language: "In consideration of the stipulations herein named and of the premium above specified the Company does insure the above Named Insured, * * * to an amount not exceeding the amount(s) above specified, *on the following described property."* [1] There appears upon the face of the policy a paragraph headed "Amounts of Insurance," which I reproduce:

"3. Insurance attaches only with respect to those items in this paragraph for which an amount is shown and only for such amount.

| ITEM | AMOUNT | |
|------|--------|---|
| (a) | $10,500.00 | On unscheduled personal property, except as hereinafter provided. |
| (b) | 7,100.00 | On personal jewelry, watches, furs, fine arts and other property as per schedules attached hereto. *Each item considered separately insured.*[2] |
| (c) | [no amount shown] | On unscheduled personal jewelry, watches and furs, in addition to the amount of $250.00 provided in Paragraph 5(b), against fire and lightening only. |
| TOTAL | $17,600.00" | |

Next to be found in the policy are the "Declarations of the Insured" reading:

"7. The following are the approximate values of the unscheduled personal property, other than jewelry, watches and furs, as estimated by the Insured, at the time of issuance of this policy:"

[Then follows a listing of various items of personal property, including silverware and pewter, linens, clothing, rugs, for a total of fourteen specific listings, plus an all-inclusive general category, each with specific valuations following the listing, with a total valuation of $13,000.00.]

Pertinent to our case is the next item which is entitled "Personal Articles Floater—Texas" wherein it is recited:

"THIS POLICY COVERS:

1. Only with respect to such and so many of the following classes of property as are indicated by a specific amount of insurance applicable thereto, and a premium therefor, which property is owned by or in the

[1]. Immediately above the language printed on the face of the policy appears this: "*$540.00* PREMIUM *Various* RATE *$17,600.00* AMOUNT." The italicized words and figures were inserted by type- writer, while the others were printed in the blank form.

[2]. All emphasis herein has been supplied unless otherwise indicated.

custody or control of the Insured and members of the Insured's family of the same household:

| Class of Property | Amount of Insurance | Rate | Premium |
|---|---|---|---|
| (a) Jewelry, *as scheduled herein.* | $5,300.00 | $3.25 | $172.00 |
| (b) Furs and garments trimmed with fur or consisting principally of fur, as scheduled herein. | 1,800.00 | 1.125 | 20.00" |

The schedule which is found upon this page of the policy is now reproduced in its entirety:

*"Scheduled Jewelry:*

(1) One Diamond Pendant, 1.31 carat Blue White Center Diamond, 14 Kt. Mtg. & 14 Kt. Yellow Gold Chain, ---------- $1,000.00

(2) One Dome Ring, 14 Kt. Y. G. with 9 Blue White Diamonds, 200.00

(3) One Dome Ring, 14 Kt. Y. G. with 9 Blue White Diamonds, 200.00

(4) One LeCoultre 17 Jewel Platinum Ladies Watch with 28 Diamonds, #615658, ---------------------------------- 400.00

(5) One Gents' Diamond Ring Center diamond $1^{57}/_{100}$ carat, Blue white, 2 baguette Diamonds with 18 Kt. mounting, --- 2,000.00

(6) One Ladies' Diamond Drop, with $1^{19}/_{100}$ carats, with 14 Kt. Mtg., -------------------------------------------- 600.00

(7) One Ladies Diamond Ring, 14 Kt. White Gold with approx. 1 carat center diamond and 10 diamonds, approx. 1 carat, -- 600.00

(8) Longines Gents' Watch with 36 diamonds, 17 jewel, 14 Kt., 300.00

$5,300.00

*Scheduled Furs:*

(9) One Ladies' Autumn Haze Mink Stole, -------- $1,050.00

(10) One Ladies' Gray Mink Stole, ----------------- 750.00

$1,800.00"

---

The policy, as indicated, was issued on March 30, 1965 and insured the specific items scheduled immediately above, including Item (5) the "Gents' Ring" which included the large diamond. The agreed statement shows that "on or about July, 1965, the 1.57 carat diamond [a part of Item (5) supra] was removed from the gentlemen's white gold mounting by * * who mounted said 1.57 carat diamond in a ladies' platinum four-prong mounting set with two baguette diamonds." "On or about August, *1967*" while so mounted, the diamond was "chipped from its girdle to its cutlet," with the consequent diminution in value.

The court, by "construing" the policy, has changed Scheduled Item (5), to afford coverage never intended by the parties. I reproduce the Item (5) as *contracted by the parties* and as *enforced by the court:*

| Contracted by the Parties | Enforced by the Court |
|---|---|
| (5) "One Gents' Diamond Ring Center diamond 15⁷⁄₁₀₀ carat, Blue white, 2 baguette Diamonds with 18 Kt. mounting, --- $2,000.00" | One Ladies' Diamond Ring Center Diamond 15⁷⁄₁₀₀ carat, Blue White, 2 baguette diamonds, platinum four-prong mounting, -------- $2,000.00 |

The parties knew the difference between "gents'" rings and "ladies'" rings, because each were "items" described in the policy. The "items" which were scheduled for insurance, and upon which the company assumed liability, were specific units and so described. Item (5) was scheduled as a "gents' ring," not a miscellaneous group of component parts which when assembled made a "gents'" ring. The constituent parts were not separately insured—the parties insured a "gents' ring" but the majority now enforces payment for damage to a ladies' ring.[3]

The error of the majority is apparent when we consider the first citation in the opinion [Perry v. Aetna Life Ins. Co., 380 S.W.2d 868, 874 (Tyler, Tex.Civ.App., 1964, error ref. n. r. e.)], to the effect that:

"Ordinarily under an agreed case the court is without authority, in the absence of a provision in the agreed statement of fact providing otherwise, to draw any inference or find any fact not embraced in the agreement unless as a matter of law such further inference or fact is necessarily compelled by the evidentiary facts agreed upon."

The evidentiary facts showed that the insured item was the gents' ring, not an un-mounted diamond or a ladies' diamond ring, and I submit that no other inference is compelled or even permissible as a matter of law.

I take as my major premise that contracts of insurance are to be governed by the same rules as other contracts. In addition to the case cited in the majority, I mention only a few others: Republic National Life Insurance Co. v. Spillars, 368 S.W.2d 92, 94, 5 A.L.R.3d 957 (Tex. Sup., 1963); Burns v. American Nat. Ins. Co., 280 S.W. 762 (Tex.Com.App., 1926); 44 C.J.S. Insurance § 289, p. 1136; 43 Am. Jur.2d, Insurance, § 257, p. 315.

So proceeding, I next encounter the rule that if the contract is unambiguous, there is no need to invoke the rule of strict construction favorable to the insured. No one contends that our contract is ambiguous, much less the parties thereto. Plaintiff did not bring a suit to reform the contract upon the ground of mutual mistake in insuring a gents' ring instead of a ladies' ring. The rule which should govern us is set out in Republic National Life Insurance Co. v. Spillars, supra:

"Where, as here, an unambiguous writing is being construed, this Court will give effect to the intention of the parties

3. In his immortal work "Through the Looking-Glass," Lewis Carroll finds Alice puzzled with Humpty Dumpty's "unbirth-days." Being questioned by Alice, Humpty said: "When I use a word, it means just what I choose it to mean—neither more nor less." But, objected Alice: "The question is, whether you can make words mean so many different things." To which Humpty replied: "The question is, which is to be master—that's all." So be it here, did the parties insure a ladies' ring or a gents' ring? Do the words mean what the parties said or do they mean what the court has said? Or, more importantly, who is to be the master?

as expressed or apparent in the writing. In the usual case the instrument alone will be deemed to express the intention of the parties, for it is objective and not subjective intent that controls. Ohio Oil Co. v. Smith, Tex., 365 S.W.2d 621. *Thus, where the language of an insurance contract is plain, it must be enforced as made."*

In the early case of Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S.W. 745, 747, 64 L.R.A. 349 (1903), the court said:

"It is true that the policy should be construed in that manner which is most favorable to the assured, and if the language of the contract is fairly susceptible of any construction that would make the insurer responsible for the loss it would be the duty of the court to place such construction upon it; *but the courts cannot undertake to make a new contract, in disregard of the plain and unambiguous language used by the parties."*

The text-writer in 43 Am.Jur.2d, Insurance, § 273, p. 333, has this to say about the rule of construction of insurance contracts:

"Conversely stated, the rule of strict construction against the insurer does not apply where the language used in the policy is so plain and unambiguous as to leave no room for construction * * *. Furthermore, the rule of strict construction against the insurer does not authorize the distortion or perversion of the language used in an insurance contract, nor does it furnish any warrant for creating an ambiguity where none otherwise exists * * *"

The text is supported by this quotation from Huff v. Southwestern Life Insurance Co., 95 S.W.2d 498, 499 (Eastland, Tex.Civ. App., 1936, error ref.):

"In fact, it has been held that rules of construction furnish no warrant for avoiding hard consequences by importing into the contract an ambiguity which

otherwise would not exist, and that such rules may not be used to force unusual and unnatural meanings from plain words. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416."

Or, as was said in Transport Insurance Co. v. Standard Oil Company of Texas, 161 Tex. 93, 337 S.W.2d 284, 288 (1960):

"Since the language is plain and unambiguous there is no occasion for construction, and the language must be given its plain meaning. The rule of liberal construction in favor of the insured applies only when the contract is ambiguous and susceptible of more than one interpretation."

To the same effect, see: Great American Indemnity Company v. Pepper, 161 Tex. 263, 339 S.W.2d 660, 661 (1960); Aetna Life Insurance Co. v. Reed, 151 Tex. 396, 251 S.W.2d 150, 152 (1952); Couch on Insurance 2d, § 42:169.

It appears that the policy involved here was substantially identical to that before the court in Automobile Ins. Co. of Hartford, Conn. v. Denny, 206 F.2d 401, 40 A.L.R.2d 865 (8th Cir., 1953), where dismounted diamonds remaining after a ladies' bracelet was converted into earrings and into diamond rings for the insured and his wife were involved. The holding in *Denny* was that the excess diamonds remaining after the creation of the new items of jewelry remained "unscheduled jewelry" and did not become "unscheduled personal property" with the $250.00 limitation. The case, however, is not authority for providing insurance upon a ladies' ring, as scheduled property, when only a man's ring is so scheduled in the policy as written.

The parties did not insure a loose blue white diamond of 1.57 carats. What was insured was a gents' ring, specifically described, which contained a diamond meeting this description.[4] A "ring" is defined

---

4. See Suderov v. Aetna Ins. Co., 16 A.D. 2d 300, 227 N.Y.S.2d 688, 690 (N.Y.Sup., 1962) indicating that a loose diamond was not insurable "because of the possibility of easy loss."

in Webster's Third New International Dictionary (G. & C. Merriam, 1967) as: "A circlet of metal or other material often set with a gem that is worn on the finger as an ornament, token, or amulet or for use as a seal." When the ring described in the policy was dismantled and a different ring created by including the stone from the old into a "circlet of metal" different from the old mounting used, the creation was then a ladies' ring. As such, it was automatically covered for its value, not to exceed $2,500.00, for a period of thirty days. This is true because the policy contained a provision reading:

"ADDITIONALLY ACQUIRED PROPERTY

6. The following clause is applicable only to jewelry, watches, furs, cameras and muscial instruments when such property is insured hereunder.

In consideration of the agreement by the Insured (1) to report additional property of the kind insured hereunder, acquired by the Insured subsequent to the attachment date of this policy, within thirty (30) days from the date acquired and (2) to pay full premium thereon from the date acquired at pro rata of the current rates of the Company for such insurance, this policy covers on each separate class of such additionally acquired property for not exceeding 25% or $10,000, whichever is the lesser, of the amount of insurance on such class exclusive of this provision. It is specifically understood and agreed by the Insured that this policy shall cease to cover such additionally acquired property if it is not reported to the Company within the stated thirty (30) day period.

"This additional coverage does not apply to property of a class not already insured hereunder."

A similar provision is found in the standard form of automobile insurance familiar to all owners of motor vehicles.[5] The requirement for reporting the substitution, within the specified thirty-day period, has been generally upheld as a condition precedent to liability on the part of the insurer. 7 Appleman, Insurance Law & Practice, §§ 4292–4293 and cases cited; 1 Couch on Insurance 2d, § 6:3, p. 239. More than two years passed before plaintiff gave any notice that he was claiming to have insured a ladies' diamond ring in lieu of the gents' ring. Had the loss occurred within the first thirty days after the substitution, defendant would have been clearly liable. Having failed to give the requisite notice of substitution, plaintiff has failed to show that he was covered under the policy of insurance upon which he sues.

Upon the stipulated facts, the trial court came to what I consider to be a correct decision and I adopt his holdings as mine:

"The Defendant is correct in its contention that when the diamond was removed from the man's mounting, as described in the insurance policy, and was mounted in a different mounting, it became an unscheduled item, and the Plaintiff is, therefore, entitled to recover $250.00."

The judgment below was right and this court is without authority to create liability when none was created by the contract. I would affirm the judgment of the trial court, using Judge Simpson's words found in National Surety Marine Insurance Corporation v. Failing, 146 Tex. 607, 211 S.W. 2d 567, 570 (1948): "As the parties have so plainly agreed, let them be bound."

The foregoing disposes of my principal objections to the majority opinion finding liability for damage to the diamond itself. I now address myself to what I conceive to be another error in the opinion, the

---

5. A portion of this automobile provision is quoted in footnote 1 in Miami Lincoln-Mercury, Inc. v. United Services Automobile Ass'n, 348 S.W.2d 276 (San Antonio, Tex.Civ.App., 1961, no writ). See also, Couch on Insurance 2d, § 6:3; 7 Amer.Jur.2d, Automobile Insurance, § 100–103, pp. 407–413.

*amount* of the judgment which is now rendered. The total exposure of the insurer with respect to the ring which it insured was the sum of $2,000.00, notwithstanding the parties stipulated that its component parts were worth $2,600.00 ($2,500.00 for the stone and $100.00 for the mounting), so that if there had been a total destruction or loss of the ring in its insured condition, the insurer would have been liable for only $2,000.00. Plaintiff purposely underinsured the ring with the diamond, presumably at a lesser premium than would have been due at its actual value. He has not had a total loss, but now has a ring valued at $835.00 (the stone at $735.00 and the mounting at $100.00). The sum of $1,165.00, if paid under the rewritten policy, would discharge the defendant's liability. Had he valued the ring at $2,600.00, and had he paid the premiums upon the increased value, I would have no hesitancy in awarding the $1,765.00 which the majority now awards under the policy as rewritten by the majority.