Mrs. Erma Gene PERRY, Guardian of Lonnie Perry, a Minor, Appellant,

v.

AETNA LIFE INSURANCE COMPANY OF CONNECTICUT, Appellee.

No. 48.

Court of Civil Appeals of Texas.

Tyler.

June 18, 1964.

Rehearing Denied July 16, 1964.

Herman W. Mead, Houston, for appellant.

Joe E. Coleman and Fouts, Moore, Williams & Caldwell, Houston, for appellee.

DUNAGAN, Chief Justice.

This suit was brought in the 129th District Court of Harris County, Texas, by Erma Gene Perry, guardian of Lonnie Perry, a minor, appellant against Aetna Life Insurance Company, appellee. This suit was predicated on an insurance policy being Group Accidental Death and Dismemberment Policy No. LL–60,615. Aetna Life Insurance Company had previously paid $7,500.00 to Erma Gene Perry as Guardian of Lonnie Perry under Group Life Policy No. 60,615. Group Life Policy No. 60,615 and Group Accidental Death and Dismemberment Policy No. LL–60,615 are separate contract, No. 60,615 providing for $7,500.00 benefits on death and No. LL–60,615 providing for $7,500.00 benefits on death by accidental means. The plaintiff set the case for trial on the non-jury docket for the week of September 30, 1963. On the Friday preceding the week of September 30, 1963, at the call of the docket, the case was set down for trial in order of its number in the customary

way. The case was not reached for trial until October 3, 1963, during the week of September 30, 1963. The appellant contended and now contends that the death of Lonnie Perry resulted from accidental means and the appellee contended and now contends that the death of Lonnie Perry did not result from accidental means within the definition of the policy. The trial court gave judgment for the appellee and this appeal has been brought by the appellant. The appellant contends that the case was tried in the trial court as an agreed case under Rule 263 of the Texas Rules of Civil Procedure. The appellee disagrees with this and says that the case was tried as any other non-jury case with each party introducing evidence and resting its case. The parties entered into a written stipulation on October 2, 1963, as to certain undisputed facts, the first paragraph thereof reading as follows:

"Now come plaintiff, Erma Gene Perry, Guardian of Lonnie Perry, a minor, and also defendant, Aetna Life Insurance Company through their respective attorneys of record, and stipulate and agree that the following facts are true and correct and as to which undisputed facts no additional proof is necessary to establish, or is to be required in this cause upon a trial hereof. This stipulation may be used on any trial of this cause or any motion for summary judgment. It is stipulated and agreed by the parties hereto as follows:"

The paragraphs contained in the stipulation which are pertinent to a proper disposition of this cause are as follows:

"6. That Group Accidental Death and Dismemberment Policy No. LL–60,615 and Certificate No 10715, both issued by Aetna Life Insurance Company, do not contain any exclusion clause other than the following:

" 'Insurance under this policy shall not cover any loss caused directly or indirectly, wholly or partly, or contributed to substantially, by bodily or mental infirmity; or ptomaines; or bacterial infections (except pyogenic infections which shall occur through an accidental cut or wound) ; or any other kind of disease; or medical or surgical treatment (except such as may result directly from surgical operations made necessary solely by injuries covered by this policy) ; or war, or any act of war; or suicide, sane or insane.'

"7. That Lonnie Perry did not die as the result of any of the following causes:

" 'by bodily or mental infirmity; or ptomaines; or bacterial infections (except pyogenic infections which shall occur through an accidental cut or wound) ; or any other kind of disease; or medical or surgical treatment (except such as may result directly from surgical operations made necessary solely by injuries covered by this policy) ; or war, or any act of war; or suicide, sane or insane.'

"8. That by the stipulation in paragraph 7 there shall be no inference, finding or conclusion that the death of Lonnie Perry resulted directly or independently of all other causes from bodily injuries sustained solely through accidental means.

"9. That Group Accidental Death and Dismemberment Policy No. LL–60,615, evidenced by Certificate No. 10715, provided benefits of Seven Thousand Five Hundred Dollars ($7,-500.00), payable on the death of Lonnie Perry upon receipt of due proof by Aetna Life Insurance Company that such loss of life resulted directly, and independently of all other causes, from bodily injuries (including bodily injuries arising out of or in the course of employment) sustained solely through accidental means.

"10. That there can be no recovery in this cause by the plaintiff unless the

death of Lonnie Perry resulted directly or independently of all other causes, from bodily injuries (including bodily injuries arising out of or in the course of employment) sustained solely through accidental means.

"11. That Lonnie Perry was shot and killed by Erma Gene Perry with a .32 caliber revolver pistol about 12:15 A.M. on October 2, 1960.

"12. That Lonnie Perry was shot by Erma Gene Perry in self-defense. Self-defense was the defense of Erma Gene Perry in the trial of the criminal case for the murder of Lonnie Perry, which resulted in a verdict by a jury of not guilty.

"13. That Lonnie Perry had purchased the .32 caliber revolver pistol for Erma Gene Perry to use for her protection some ten years prior to October 1, 1960, and Lonnie Perry knew that said pistol was in the house occupied by Erma Gene Perry at 2801 Stallings Drive.

"14. That Erma Gene Perry and Lonnie Perry had been separated for some three months prior to September 15, 1960, during which time they lived separately. Their separation had been occasioned by Lonnie Perry's relationship with other women and on occasions when caught by Erma Gene Perry with other women or when reprimanded for going out alone Lonnie Perry had inflicted beatings on Erma Gene Perry. Erma Gene Perry had filed a suit for divorce from Lonnie Perry and said divorce suit was pending and no divorce had been granted on October 2, 1960, and no restraining orders were in effect.

"15. That Lonnie Perry had moved back into the house at 2801 Stallings Drive with Erma Gene Perry approximately two weeks prior to October 1, 1960.

"16. That on October 1, 1960, Lonnie Perry left home at approximately 7:30 A.M. in the car owned by the Schlumberger Well Surveying Corporation, for whom he worked as a chauffer. Erma Gene Perry followed him in her car and observed him in the company of another woman, at which time she confronted him and told him that due to his continued association with other women that she was no longer going to live with him and wanted him to return home and get his clothes and leave. Lonnie Perrie returned home at approximately 10:00 A.M. on October 1, 1960. He was told by Erma Gene Perry to pack his clothes and get out. He left and returned home about 6:30 P.M. on October 1, 1960. He was asked by Erma Gene Perry what time he was planning on leaving and he said that she needn't worry that he was going to get out. He packed his clothes and put them on the front porch and left. About 12:15 A.M. on October 2, 1960, Erma Gene Perry was awakened while she was in the house at 2801 Stallings Drive by a noise at the front door. She got out of bed, got the pistol out of the dresser drawer and went into the hall, where she could see the front door. Lonnie Perry was in the process of breaking in the screen door and wooden door at the front of the house. Erma Gene Perry told Lonnie Perry not to come in the house, that all of his clothes were on the front porch. Lonnie Perry continued to break the screen door and wooden door open. The lights were on on the outside porch where Lonnie Perry was breaking the doors open, and in the living room where Erma Gene Perry was standing with the pistol in her hand in front of her in plain view. Erma Gene Perry could plainly see Lonnie Perry as he broke the door open. There was nothing that prevented Lonnie Perry from plainly observing Erma Gene Perry. He broke the screen door

open and then battered the wooden door open with his shoulder breaking the lock on the wooden door, as well as a safety chain. Erma Gene Perry said 'Don't come in here. I will shoot.' Lonnie Perry continued to break the door open and upon getting inside started toward Erma Gene Perry. Erma Gene Perry fired the pistol at Lonnie Perry for the purpose as she stated of 'hoping to scare him so that he would stop and leave.' The first shot did not hit Lonnie Perry. Lonnie Perry continued to come toward Erma Gene Perry after the first shot and while still advancing stated 'I broke your arm once and I am going to break your neck this time.' Erma Gene Perry then fired the .32 caliber revolver at Lonnie Perry again. The second shot hit Lonnie Perry in the forehead approximately one and one-half inches above his right eye and resulted in his death. Erma Gene Perry had never threatened Lonnie Perry with a pistol or fired a pistol at him prior to the time of the shooting resulting in his death. Aetna Life Insurance Company has previously paid Seven Thousand Five Hundred Dollars ($7,500.-00) to Erma Gene Perry as guardian for Lonnie Perry, Jr., under Group Life Policy No. 60,615. Group Life Policy No. 60615 and Group Accidental Death and Dismemberment Policy No. LL-60615 are separate contracts, No. 60615 providing Seven Thousand Five Hundred Dollars (7,500.00) benefits on death by accidental means.

\*   \*   \*   \*   \*   \*

"18. That Aetna Life Insurance Company did not pay benefits under Group Accidental Death and Dismemberment Policy No. LL-60615 upon the death of Lonnie Perry, to Lonnie Perry, Jr., a minor, through his guardian within thirty days after demand.

\*   \*   \*   \*   \*   \*

"20. That Lonnie Perry was not intoxicated, drunk or insane at the time of his death.

"21. That Lonnie Perry knew the .32 caliber revolver was kept loaded.

"22. That Erma Gene Perry would have opened the door to the house as Lonnie Perry asked her, but he just started beating the door down.

"23. That Erma Gene Perry believed from Lonnie Perry's conduct and acts that Lonnie Perry intended to do physical harm to her.

"24. That Lonnie Perry had no defects of hearing or eyesight and was over 6 feet 2 inches in height and weighed over 200 pounds. Erma Gene Perry was 5 feet 5 inches in height and weighed 170 pounds.

"25. That the .32 caliber revolver made the normal noise of a pistol of that type when it was fired by Erma Gene Perry at Lonnie Perry.

"26. That Erma Gene Perry had never committed any violence on the person of Lonnie Perry during their marriage, or on October 1, 1960 or October 2, 1960."

Appellant has brought forward three points of error, to-wit:

## FIRST POINT

"ERROR OF THE TRIAL COURT IN ENTERING JUDGMENT BASED ON FACTS FOUND BY THE COURT OUTSIDE THE RECORD IN THE CASE."

## SECOND POINT

"ERROR OF THE TRIAL COURT IN ITS CONCLUSION AS A MATTER OF LAW, THAT LONNIE PERRY, SR., ANTICIPATED HIS WIFE WOULD KILL HIM ENTERING HIS OWN HOME."

## THIRD POINT

"ERROR OF THE TRIAL COURT IN SETTING ASIDE AND DISREGARDING THE STIPULATION OF ALL FACTS AGREED TO BY BOTH PARTIES."

Appellant's three points of error are so closely related that we will discuss and dispose of them together.

The appellant is contending that by virtue of the fact that there was a stipulation as to certain undisputed facts introduced at the trial that this constituted a submission of the case to the court under an agreed statement of facts as encompassed by Rule 263 of the Texas Rules of Civil Procedure. The appellee contends that this stipulation was an ordinary stipulation frequently used by attorneys. The court expressly found in its findings of fact requested by the appellant that the cause was set for trial on the non-jury docket by the appellant for the week of September 30, 1963, and that this cause was tried under the Texas Rules of Civil Procedure applicable to non-jury cases and was not tried as an agreed case under Rule 263 of the Texas Rules of Civil Procedure. The case was reached for trial on October 3, 1963, at which time the case was tried before the court. The appellant introduced into evidence the stipulation and rested her case. The appellee thereupon introduced into evidence the same stipulation and rested its case. Upon each party having rested its case, the court heard arguments and rendered judgment for the appellee. Four days later on October 7, 1963, the appellant filed a motion asking the court to certify the stipulation as an agreed statement of facts. The appellee filed an answer to appellant's motion attaching an affidavit by her attorney, Joe E. Coleman, setting out certain facts leading up to the signing of the stipulation specifically denying that it was agreed that this stipulation would be an agreed statement of the case. The affidavit states "One of the first drafts was an agreed statement of facts prepared in

the form attempting to comply with Rule 263 of the Texas Rules of Civil Procedure as to an agreed case. On the night of October 1, at about 7:00 P.M., the affiant called Mr. Herman Mead, the attorney for the plaintiff at his home, and notified him that no stipulation could be entered into if it was going to be a stipulation such as was invisioned by Rule 263 of the Texas Rules of Civil Procedure but that the defendant would be willing to enter into an ordinary and regular stipulation such as is commonly used which could be used in any trial of the cause or on any motion for summary judgment. The attorney for the plaintiff indicated that this was agreeable to him. He had been previously furnished a draft of the stipulation which had recited on the front page that it was an Agreed Statement of Facts and which on the last sheet contained a certificate to be made by the District Judge stating that the contents of the foregoing Agreed Statement of Facts were true and correct. He was told that the first and last pages would be retyped deleting all statements and all references to Agreed Statement of Facts and removing the certificate and would merely be signed by the parties and would be a simple stipulation to be used when the case was called for trial if it was reached. The first and last pages of the proposed stipulation were retyped on Wednesday morning and presented to the attorney for the Plaintiff, Mr. Herman Mead, and inserted in his copy. Mr. Mead indicated his agreement to this and on Wednesday, October 2, at about 1:30 P.M. in the 125th District Courtroom he signed the stipulation and it was filed among the papers of the cause. The stipulation was also signed by counsel for the defendant. The above entitled and numbered cause was reached for trial at 1:30 P.M. on October 3. At no time was there any agreement that the stipulation which was filed among the papers of the cause was an agreed statement of facts in compliance with Rule 263 of the Texas Rules of Civil Procedure and, in fact, attorneys for the defendant expressly told

attorney for the plaintiff that they would not make any stipulation at all if it was under Rule 263 of the Texas Rules of Civil Procedure. At no time was there any agreement that the above cause was to be submitted as an agreed case under Rule 263 of the Texas Rules of Civil Procedure." The appellee's answer and affidavit was filed on October 7, 1963, the same date that appellant filed her motion to certify the stipulation as agreed statement. A hearing on the motion of appellant was held on the same date, October 7, 1963, and the court denied the motion overruling the motion of appellant to certify found that the cause was set for trial on the non-jury docket and was tried under the Texas Rules of Civil Procedure applicable to non-jury trials and was not tried as an agreed case. The affidavit of appellee's attorney was not controverted prior to the hearing and the entering of the judge's order denying appellant's motion. The appellant on October 11, 1963, filed a request for findings of fact and conclusions of law. In response to the request of appellant, the court found some eleven findings of fact and four conclusions of law. In addition to finding all the facts contained in the stipulation the court made some additional findings based upon the evidence contained in the stipulation.

Appellant objected and excepted to the court's finding Numbers 6, 7, 8, 9, 10 and 11 on the ground that these findings were not contained in the stipulation and that there is no authority in law for the court to make findings of fact other than those contained in the stipulation of facts.

Rule 263 provides "Parties may submit matters in controversy to the court upon an agreed statement of facts filed with the clerk, upon which judgment shall be rendered as in other cases; and such agreed statement signed and certified by the court to be correct and the judgment rendered thereon shall constitute the record of the cause."

An agreed case and an ordinary stipulation differ from each other primarily in the findings that can be made outside of the facts contained in the agreed statement. Under an ordinary stipulation the court could make any findings and could indulge in any inference that would be supported by the evidence.

Ordinarily under an agreed case the court is without authority, in the absence of a provision in the agreed statement of fact providing otherwise, to draw any inference or find any fact not embraced in the agreement unless as a matter of law such further inference or fact is necessarily compelled by the evidentiary facts agreed upon. Abilene Hotel Corporation v. Gill (Tex.Civ.App. 1945) 187 S.W.2d 708 (ref. w. m.); Hutcherson v. Sovereign Camp, W.O.W., 112 Tex. 551, 251 S.W. 491; Texas Mexican Ry. Co. v. Scott, 1910, 60 Tex.Civ.App. 482, 129 S.W. 1170 (writ refused).

It is obvious from the face of the instrument that it did not refer to the cause being submitted on an agreed statement of facts nor did it anywhere stipulate or have any wording referring to "agreed statement of facts." The stipulation does not refer to Rule 263 nor was it signed and certified by the court as required by this rule.

In 3 Texas Jurisprudence 2d, under Agreed Case, it is stated:

"1: * * *

"A mere agreement in open court to submit one of several issues or the mere introduction in evidence of a written agreement signed by the attorneys for the respective parties is not an agreed case.

"2: The decisions require the statement of facts to contain a recital of all the facts of the case on which the parties have agreed and on which they seek to obtain judgment. It must expressly stipulate that the cause shall be tried on the facts so agreed upon, and

that the facts agreed upon are all the facts of the case."

Cited as authority for this statement is Bomar v. West, 87 Tex. 299, 28 S.W. 519; The Praetorians v. Simons, Tex.Civ.App., 187 S.W.2d 238.

The instrument expressly provides that the parties stipulate and agree as to the following undisputed facts and no additional proof is necessary to establish it or is to be required upon a trial hereof. It certainly implies there may be other facts as to which either party may offer proof if they so desire and only as to the facts in the stipulation is no further proof required.

In 3 American Jurisprudence 2d, Agreed Case, Section 5, we find the following statement:

"Although an agreed case might be considered a kind of stipulation, and although the terms are sometimes used interchangeably, as used in this article an agreed case is distinguishable from a stipulation. An agreed case in this sense requires agreement on all the ultimate facts essential for determination of the particular litigation, leaving to the court only the function of deciding questions of law, and, except where there is a particular stipulation to that effect, not allowing the court to draw inferences of fact from the facts agreed on. A mere stipulation, however, does not place the ultimate facts essential to determination of the case beyond issue or beyond need for adjudication. It is merely an agreement on certain particular facts, thus avoiding the need to present evidence regarding them but not eliminating the court's function of drawing inferences from the stipulated facts and others shown by evidence * * *."

■ The appellant, although contending that the cause was tried as an agreed case, requested the trial court to make findings of fact and conclusions of law. As a general rule, findings of fact do not have any place in the trial of an agreed case. Ocean Accident and Guarantee Corp., Ltd. v. Riggins, et al., 291 S.W. 276 (Tex.Civ.App. 1927) writ refused.

The appellant seems to be contending that where the parties enter into a stipulation such as the one in this case that the cause becomes an agreed case as a matter of law. If such were the case, parties to lawsuits could never stipulate as to any undisputed facts without the cause being submitted as an agreed case. It has been held to be an agreed case where the case was submitted to the District Judge upon an agreed statement of facts made out and signed by counsel for the respective parties, and certified by the court to be correct. Thaison v. Sanchez, 13 Tex.Civ.App. 73, 35 S.W. 478; The Praetorians v. Simons, et al., supra. The rule announced in the Thaison case was approved by the Supreme Court in answering certified questions in Scott v. Slaughter, 97 Tex. 244, 77 S.W. 949.

No authority has been cited nor have we found any holding that a stipulation between the parties such as the one before us constitutes an Agreed Case under the provisions of Rule 263.

■ In determining whether the stipulation was just that (a stipulation) or an agreed statement of facts, the following points are important:

1. The instrument does not denote itself as an agreed statement of facts nor does it refer to Rule 263.

2. It does not purport to contain all the facts.

3. It contained no certificate for the judge to certify and approve nor did the judge certify and approve the stipulation.

4. The request by the appellant for findings of fact and conclusions of law.

5. The instrument does not place the ultimate fact essential to determination of the case beyond need for adjudication.

The very basis for appellant's contention is that there were facts not agreed on which the court was not entitled to find. By stipulation No. 10 it is expressly stated that there can be no recovery by the plaintiff unless the death was by accidental means. Necessarily, these facts are left for the court.

6. Stipulation No. 8 says: "That by the stipulation in paragraph 7 there shall be no inference, finding or conclusion, that the death of Lonnie Perry resulted directly or independently of all other causes from bodily injuries sustained solely through accidental means." This is the only instance in which no inference, finding or conclusion is to be indulged in by the court or jury. By implication at least the court could make any other supportable findings, inferences or conclusions.

7. The appellant did not ask the court to certify the stipulation in accordance with Rule 263 at or before the trial, her motion to certify not having been filed until four days after the trial. The judgment does not show that the case was tried as an Agreed Case.

The judgment of the trial court in disposing of this cause reads in part as follows:

"And came the parties by their attorneys, no jury having been demanded, and submitted the matters in controversy, as well of fact as of law, to the Court, and the pleadings, the evidence and argument of counsel having been heard and fully understood, it is the opinion of the Court that the plaintiff should take nothing by her suit."

This judgment was signed by the trial judge and approved as to form by Herman W. Mead, attorney for plaintiff, and Fouts, Moore, Williams and Caldwell, by Joe E. Coleman, attorneys for defendant.

Where parties submit matters in controversy to the court upon an agreed statement of facts under provision of Rule 263, such agreed statement is required to be signed and certified by the court. While the rule requires that the agreed statement should be signed and certified by the court, it has been held that such is not necessary where it otherwise appears from the record that the case was tried upon such statement of facts. Darr v. Johnson, Tex.Civ.App.1924, 257 S.W. 682, affirmed by Supreme Court, 114 Tex. 516, 272 S.W. 1098; Lutcher v. Fuller, Tex.Civ. App.1918, 200 S.W. 553 (writ refused).

The appellant has presented no reason to the court as to why she considers the stipulation an agreed statement of facts, her brief only containing the bare conclusion that the cause was tried as an agreed case.

In considering all the facts, circumstances and actions of the parties the trial court's finding that this cause was not tried as an agreed case under Rule 263 is supported by the record and should not be disturbed.

In response to the request of plaintiff the trial court made the following findings of fact and conclusions of law.

## "FINDINGS OF FACT"

"1. This cause was set for trial on the non-jury docket by the Plaintiff for the week of September 30, 1963.

"2. Said cause was tried under the Texas Rules of Civil Procedure applicable to non-jury cases and was not tried as an agreed case under Rule 263 of the Texas Rules of Civil Procedure.

"3. The Plaintiff introduced into evidence a stipulation signed by attorneys for Plaintiff and attorneys for Defendant and rested her case, said stipulation being filed among the papers of the cause on October 2, 1963, and bearing file mark of that date.

"4. The Defendant introduced into evidence the same stipulation mentioned in No. 4 above and rested its case.

"5. I hereby find all of the facts contained in that stipulation as to undisputed facts, signed by attorney for Plaintiff and attorney for Defendant, filed among the papers of the cause on October 2, 1963, and bearing file mark of that date.

"6. Lonnie Perry knew that Erma Gene Perry had the .32 caliber revolver pistol in her hand during the encounter that resulted in Lonnie Perry's death.

"7. Lonnie Perry heard Erma Gene Perry's warning 'Don't come in here. I will shoot.'; and Lonnie Perry heard the pistol when it was fired by Erma Gene Perry at him the first time.

"8. Lonnie Perry provoked the encounter with Erma Gene Perry that resulted in his death.

"9. From the viewpoint of Lonnie Perry, his conduct was such that he should have anticipated that in all reasonable probability Erma Gene Perry would kill him.

"10. From the viewpoint of Lonnie Perry, under the conditions that existed, a reasonably prudent man would have known that Erma Gene Perry would shoot him if he continued his conduct.

"11. The death of Lonnie Perry did not result directly or independently of all other causes, from bodily injuries (including bodily injuries arising out of or in the course of employment) sustained solely through accidental means.

## "CONCLUSIONS OF LAW"

"1. There can be no recovery in this cause by the Plaintiff unless the death of Lonnie Perry resulted directly or independently of all other causes, from bodily injuries (including bodily injuries arising out of or in the course of employment) sustained solely through accidental means.

"2. Whether the death of Lonnie Perry resulted from accidental means must be determined from Lonnie Perry's viewpoint.

"3. Since from Lonnie Perry's viewpoint his conduct was such that he should have anticipated that in all reasonable probability Erma Gene, Perry would kill him, his death was not the result of accidental means.

"4. Based on the facts in this cause, there can be no recovery by the Plaintiff herein."

■ Death is produced by, or as the result, of accidental means when it is not the natural and probable consequence of the means which produced it, or, stated differently, when death does not ordinarily follow and therefore cannot be reasonably anticipated as the result of the use of such means. Spencer v. Southland Life Insurance Company, 340 S.W.2d 335, (Tex.Civ. App., 1960), writ refused; Seaboard Life Insurance Company v. Murphy, 134 Tex. 165, 132 S.W.2d 393.

■ Where the insured is the aggressor, and knew, or should have anticipated that the other might kill him in the encounter, the death is not to be considered accidental. Occidental Life Insurance Company v. Holcomb, 5 Cir., 10 F.2d 125, 127.

In Texas Prudential Insurance Company v. Turner, Tex.Civ.App., 127 S.W.2d 563, 566, the court held:

"On the undisputed facts, it is our conclusion that Turner, by his conduct on the occasion in question, provoked the difficulty with Garrett under conditions which would have led a reasonably prudent man to believe that Garrett would shoot him if he continued the assault. Garrett was armed with a deadly weapon. He had the weapon in his hand, and pointing it at Turner, threatened to shoot him if he continued to advance. Notwithstanding the warning given by Garrett, under all the testimony Turner continued to advance, and Garrett shot him. There was no ground for the presumption by Turner, that if a fight occurred be-

tween him and Garrett, it would be carried on without the use of the deadly weapon. 'The injury followed in a usual or reasonably to be expected way from the means voluntarily employed' as that fact conclusion was construed by the Supreme Court in the Bryant case, supra, [Bryant v. Continental Casualty Company, 107 Tex. 582, 182 S.W. 673, L.R.A.1916E, 945] and therefore the conclusion follows that the death of Doc Turner was not the result of a bodily injury 'sustained * * * solely through * * * accidental means.' "

The undisputed facts in this case amply support the findings of fact and conclusions of law and the judgment of the trial court.

If we should be mistaken in holding that the stipulation was that only and not an agreed statement of facts under Rule 263, and this cause was submitted and tried as an agreed case, such mistake could not affect the outcome of this appeal as we are convinced that disregarding the facts found by the court and objected to by the appellant, that the judgment of the trial court is amply supported by the undisputed facts contained in the stipulation between the parties.

■ In this case the insured broke down two doors with his shoulder and forced his way into the house where the appellant was standing with a gun in her hand. She warned him that she would shoot. He continued to come toward her. She then fired a warning shot. He continued to advance and said:

"I broke your arm once and I'm gonna break your neck this time."

These are undisputed facts stipulated to by the parties. They are before this court unchallenged. Based on these facts and the law to be applied as set out herein, we believe the trial court was justified in concluding that deceased should have anticipated that in all reasonable probability, he would be killed, and that his death was

not therefore the result of accidental means, thereby preventing a recovery under the provision of the policy.

Finding no reversible errors in the record, the judgment of the trial court is affirmed.