**Joe H. DAYWOOD d/b/a Capitol Vending Company et al., Appellants,**

v.

**Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellees.**

No. 11893.

Court of Civil Appeals of Texas, Austin.

March 15, 1972.

Rehearing Denied April 5, 1972.

Sneed, Vine, Wilkerson & Selman, J. P. Darrouzet, Austin, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., John R. Grace and Lewis A. Jones, Asst. Attys. Gen., Austin, for appellees.

O'QUINN, Justice.

By this lawsuit three cigarette vending machine firms operating in Austin are seeking to recover from the state excise taxes amounting to $7,073.19 paid by them to the State Comptroller under protest subsequent to a statutory increase in the cigarette tax effective October 1, 1969.

The trial court in judgment entered on July 29, 1971, decreed that plaintiffs below take nothing, from which decision the vending firms have appealed. We will affirm judgment of the trial court.

The appellants, all of whom were plaintiffs below, are Joe H. Daywood, doing business as Capitol Vending Company, Tony Daywood, doing business as Tony Daywood Vending Company, and J. D. Staub and T. J. Staub, doing business as Acme Vending Service Company. The defendants below and appellees here are Robert S. Calvert, Comptroller of Public Accounts, Jesse James, State Treasurer, and Crawford Martin, Attorney General of Texas.

Appellants bring three points of error. Under the first point appellants contend that since the increase of the tax in 1969 became effective after the "first sale" in intrastate commerce had occurred, at which time the then applicable tax was paid, the subsequent increase in the tax was not lawfully collectible from appellants. Under their second and third points appellants contend that collection of the tax from them was in violation of the Texas Constitution.

Appellants are engaged in the business of vending cigarettes by means of ma-chines dispensing individual packages of cigarettes upon deposit of a required number and denomination of coins. Appellants are licensed as retailers, selling directly through their machines to the ultimate consumer.

The cigarettes upon which the tax was levied, giving rise to this lawsuit, were purchased by appellants in 1969, prior to the effective date of the tax increase, from a licensed distributor in Austin who had acquired the cigarettes directly from the manufacturer in interstate commerce. Inasmuch as the sale by the distributor to appellants was the first sale in intrastate commerce, the distributor collected from appellants the tax then in force, which did not include the increase to take effect October 1.

Appellants placed the cigarettes in their warehouses and in their machines, and when the additional tax became effective on October 1, the Comptroller demanded reports of inventories from the vending firms and payment of the additional tax on the inventories. Appellants were credited with tax exemptions on 2,000 cigarettes, or 100 packages, for each of about 325 machines, under provisions of Article 7.08(3) of the cigarette tax law, and were required to pay the additional tax on the balance of their stocks as of October 1, 1969.

Appellants paid the additional tax, under protest, and adjusted their machines to collect the tax from the ultimate consumers. One of the appellants testified that he started changing his machines to include the tax increase about a week before the tax became effective. Appellants conceded at the trial that if awarded refund of the tax, the tax money refunded could not be returned to their customers, the ultimate consumers who in the end paid the tax.

Appellants' position on appeal is that they were entitled to a windfall through purchases of large stocks of cigarettes, in anticipation of the tax, enabling them, after the tax increase, to profit either by rais-

ing the price of cigarettes to cover the tax, or by underselling other retailers at the old price.

As will be demonstrated, appellants were not entitled to a windfall from the tax increase under either theory.

The "Cigarette Tax Law" is Chapter 7 of Title 122A, Taxation-General, V.A.T.S., consisting of Articles 7.01 through 7.41.

The tax is not levied on persons or firms dealing in cigarettes, but, rather, on the ultimate consumer. Article 7.02(3) provides, "The impact of the tax levied by this Chapter is hereby declared to be on the vendee, user, consumer or possessor of cigarettes in this State and *when said tax is paid by any other person, such payment shall be considered as an advance payment* and shall *thereafter be added to the price* of the cigarettes and *recovered from the ultimate consumer or user.*" (Emphasis added)

Cigarettes arriving in Texas through interstate commerce from the manufacturers, located principally in Kentucky or North Carolina, are without the tax stamp until withdrawn from one of the ten bonded warehouses in the state. The Comptroller's dealings, to collect the tax, initially are with the ten bonded warehouses and some 205 licensed distributors. There the tax stamp becomes affixed. Thereafter the cigarettes may be shipped to any of some 750 licensed wholesale dealers or directly to any of about 100,000 licensed retailers. Vending machine firms are licensed as retailers and their machines constitute about fifty-five percent of the retail outlets in the state.

The cigarette tax law defines, and provides for the licensing of, distributing agents, distributors, wholesale dealers, and retail dealers. These persons establish a chain for conveying cigarettes from the manufacturers to the ultimate consumers. Arts. 7.01, 7.09, 7.16, 7.21, 7.23.

■ The cigarette tax is declared an excise or use tax by Article 7.41. Every licensed person or firm in the chain of distribution from manufacturer to the consumer, having the statutory duty to collect the tax in advance, or subject to such requirement, becomes a collector of excises for the state. McCarty v. James, 453 S. W.2d 220, 224 (Tex.Civ.App. Austin 1970, writ ref. n. r. e.).

■ The tax collected is money belonging to the state, held in trust for the state by the licensed person or firm collecting the money, whether the tax be collected on the occasion of the first sale or transaction within the state, or at the final sale to the ultimate consumer. For principle see: 51 Am.Jur. Taxation, section 1277, p. 1089; 84 A.L.R. 839, 880; Shipe v. Consumers' Service Co., 7 Cir., 28 F.2d 53; Wade v. State, 97 Colo. 52, 47 P.2d 412 (1935).

Appellants place emphasis on the language of Article 7.06, which as amended levied the additional tax in 1969.

That statute provided, "The tax shall be paid only once by the person making the 'first sale' . . . and shall become due and payable as soon as such cigarettes are subject to a 'first sale' in Texas, it being intended to impose the tax as soon as such cigarettes are received by any person in Texas for the purpose of making a 'first sale' of same."

Appellants insist that under this language and the provisions of Article 7.01(13) defining "Distributor," the tax may be collected only from a distributor, who is defined as " . . . *every person* . . . who manufactures or produces cigarettes or who ships, transports, or imports into this State or in any manner acquires or possesses cigarettes and *makes a 'first sale'* of the same in this State . . ." (Emphasis by appellants)

The definition of "first sale" is not limited to the first transfer of cigarettes within the state, but also includes "the first *use*

*or consumption* of cigarettes within this State." (Emphasis added) Art. 7.01(8).

The basic "rate of tax" is stated in Article 7.02, and additional taxes are levied by Article 7.06 and amendments from time to time of that article. When a change in denomination of the cigarette stamp tax occurs, resulting from an increase under Article 7.06, procedures for collecting the additional tax are pursued by the Comptroller as provided in Article 7.08(3).

When such change occurs, cigarettes in the hands of distributors are assessed the additional tax in the same manner that collection is made on cigarettes first arriving in the state from the manufacturer. In addition, wholesalers and retailers are required to inventory their stocks on the effective date of the change in the tax and to submit their inventories to the Comptroller accompanied by cashier's checks representing the amount of the additional tax on such stocks.

■ It is well established that an excise tax may be increased, and the increase is collectible, even though the tax first levied or fixed has been paid in advance. Mann v. Gulf States Utilities Co., 167 S.W.2d 557 (Tex.Civ.App. Austin 1942, writ ref.); Houston Oil Co. v. Lawson, 175 S.W.2d 716 (Tex.Civ.App. Galveston 1943, writ ref.).

■ The cigarette tax belongs to the state, and not to distributors, wholesalers, or retailers moving the cigarettes in commerce toward the ultimate consumer, and the Comptroller has the authority to demand payment of the tax in advance from any licensed person in the chain of distribution, having possession of a stock on hand on which the additional tax has not been paid, to the point of final sale to the ultimate consumer. Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713.

In Patton v. Brady an excise tax on tobacco was under consideration. The Court said, "Neither can it be said that the change in ownership of the tobacco . . had placed it beyond the reach of an excise. It is true that it had passed from the manufacturer, but it had not reached the consumer. * * * Within the scope of the various definitions . . . [of an excise] there can be no doubt that the power to excise continues while the consumable articles are in the hands of the manufacturer or any intermediate dealer, and until they reach the consumer."

It cannot be said that it was the intent of the Legislature that increases from time to time in the cigarette tax would create a market in which commercial handlers of cigarettes could avail themselves of windfalls. The increase in the tax, to be added to the price of cigarettes, was intended to be money of the state, payable in advance to the state, and recoverable by the licensed persons making such advance payments from the ultimate consumer or user. Art. 7.02(3).

The appellants, as licensed retailers of cigarettes, are agents for the state to pay the tax in advance when so directed by the Comptroller pursuant to his authority, derived particularly from Article 7.08(3). In performing that function, appellants are not taxpayers but tax collectors, since they are authorized, even directed, by statute to recoup the tax paid in advance from the ultimate consumer by adding the tax to the price of cigarettes which in this case they admit they have done. Art. 7.02(3).

■ We reject appellants' contention under their first point and overrule the point.

Although we entertain strong doubt that appellants, who are collecting agents for the state and not taxpayers, have a justiciable interest to contend that, in violation of the State Constitution, the tax increase imposed by the Legislature in 1969 was a retroactive law, or that the amendment failed to evidence an intent to tax inventories in the hands of retailers, we will dispose of these contentions.

The amendment of Article 7.06 in 1969, by which the additional tax was levied, became effective on October 1, and its plain purpose was to tax the ultimate consumer as provided in Article 7.02(3). For all cigarettes that had not reached the consumer by October 1, the tax increase was applicable to a future event, the purchase of cigarettes from the retailer, including vending machines, by the ultimate user or consumer. The Comptroller was free to proceed under Article 7.08(3), in anticipation of the future event, to demand advance taxes from any licensed person in the chain of distribution prior to the time of final sale to the consumer. The record shows that the tax increase of 1969 produced more than $3,250,000, collected by the Comptroller under Chapter 7. Appellants concede that, beginning with the effective date of the additional tax, they were able, by adjusting their machines, to collect the tax from the ultimate consumer and recover the advance payments they made to the Comptroller. The tax increase was not retroactive in its application and did not violate Article I, section 16, of the State Constitution, Vernon's Ann.St.

Appellants contend under their final point that the 1969 amendment failed to announce the intent of the Legislature to tax inventories in the hands of retailers such as appellants. The 1969 amendatory Act purported to amend the cigarette tax law in only two articles. Article 7.06 was amended to provide for the tax increase, and new language in two definitions was placed in Article 7.01. Other articles of Chapter 7 remained the same, neither repealed nor amended, expressly or by implication. The amended articles are to be read with the articles unchanged as one body of law on the subject of cigarette taxation. Appellants thus were on notice that the Comptroller had authority under Article 7.08(3) to require reports of inventories and demand advance payment of the tax increase from any licensed person in the chain of distribution as of the date the additional tax became effective. The

amendatory legislation did not violate the requirements of Article III, section 35, of the Constitution. Points two and three are overruled.

The judgment of the trial court is in all things affirmed.