cv4-123.7 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00123-CV







James W. Davis, Appellant



v.



The State of Texas; the Cities of Houston, Ranger and Gonzales, Texas;


and the Transit Authorities of Houston, Texas and Dallas, Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 468,208A, HONORABLE PETE LOWRY, JUDGE PRESIDING





 

 In an action for sales taxes collected but not remitted to the State of Texas,
appellant James W. Davis appeals the trial-court judgment rendered in favor of the State of Texas;
the Cities of Houston, Ranger, and Gonzales; and the Transit Authorities of Houston and Dallas. 
We will reverse the trial court's judgment, remanding the cause to the district court for further
proceedings in accordance with this opinion.



 FACTUAL AND PROCEDURAL BACKGROUND


 The facts of this case were orally stipulated at trial and supported by a single piece
of stipulated documentary evidence. In short, by December 31, 1984, Jim Davis Auctioneers,
Inc. ("JDA") had collected $190,737.12 in sales taxes; of this amount, state sales taxes totaled
$134,350.43, city sales taxes totaled $28,914.43, and transit authority sales taxes totaled
$27,472.26. Davis was president and director of JDA throughout the time period at issue; he
controlled both the management and financial affairs of JDA. Davis, or those answerable to him,
commingled the tax receipts into JDA's operating account and paid out the funds to entities other
than appellees. To date, no sales taxes JDA collected have been remitted to appellees.

 The Comptroller certified the delinquent amounts to the Attorney General for
collection. Based on the certification, appellees filed suit on July 12, 1989. (1) The issues to be
determined at trial were Davis's alleged conversion of the sales tax receipts and his liability under
section 111.016 of the Tax Code. The trial court rendered judgment in favor of appellees on
December 8, 1993. Davis appeals the trial court's judgment.



DISCUSSION



I. Jurisdiction

 At the outset, we address appellees' jurisdictional cross point of error by which
they contend this Court erred in denying their motion to dismiss for want of jurisdiction because
Davis did not timely perfect his appeal. To perfect his appeal, Davis did not file security for costs
within thirty days of the signing of the trial court's judgment. Instead, he timely requested
findings of fact and conclusions of law from the trial court and thereafter filed a cost bond within
ninety days after the judgment was signed. See Tex. R. App. P. 41(a)(1) (extending deadline for
perfecting appeal from thirty to ninety days after judgment is signed when findings of fact and
conclusions of law are timely requested following non-jury trial). Appellees argue that Davis's
request for findings of fact and conclusions of law failed to extend the deadline to perfect an
appeal because findings of fact and conclusions of law are (1) unwarranted unless a trial has taken
place and (2) inappropriate in an agreed case. We will address each argument in turn.



 A. Trial

 Appellees remind us that parties may request findings of fact and conclusions of
law only in cases tried without a jury. See Tex. R. Civ. P. 296. Appellees place much emphasis
on the word "tried": they argue that a proceeding based on stipulated evidence, like that in the
instant case, cannot be characterized as a "trial" within the meaning of Rule 296, and assert that
any request for findings of fact and conclusions of law stemming from such a proceeding therefore
does not extend deadlines for perfecting an appeal. We disagree. The "trial" envisioned by Rule
296 is an evidentiary hearing to the court or a bench trial on the merits. Zimmerman v. Robinson,
862 S.W.2d 162, 164 (Tex. App.--Amarillo 1993, no writ).

 In the instant cause, the factual evidence was orally stipulated in proceedings before
the trial court. One exhibit was introduced and offered into evidence. The trial court
subsequently rendered judgment. We conclude that the instant case was "tried . . . without a
jury" as required by Rule 296; a bench trial on the merits took place regardless of whether the
court received only stipulated evidence.



 B. Agreed Case

 Because the proceedings constituted a nonjury trial, we generally would conclude
that the timely filing of a request for findings of fact and conclusions of law extended the deadline
to perfect an appeal to ninety days after the judgment was signed. See Tex. R. App. P. 41(a)(1). 
However, appellees argue that we should treat the instant cause as an "Agreed Case" under Texas
Rule of Civil Procedure 263 (2) and hold that a request for findings of fact and conclusions of law
is inappropriate and cannot extend the appellate timeline. 

 To qualify as an agreed case, an agreed statement of facts upon which judgment
shall be rendered must be filed with the court clerk. Tex. R. Civ. P. 263. (3) The parties in this
cause did not strictly comply with Rule 263. However, appellees maintain that "[i]f the parties
stipulate all the facts of an action, . . . the stipulation may be treated as a submission upon an
agreed statement [pursuant to Rule 263]." Lambda Constr. Co. v. Chamberlin Waterproofing &
Roofing Sys., Inc., 784 S.W.2d 122, 125 (Tex. App.--Austin 1990, writ denied); see also Cobb
v. Harrington, 190 S.W.2d 709, 715 (Tex. 1945) (treating case submitted on stipulation so
complete that "it shows what the controversy between the parties is, and the facts out of which
the controversy arose, and leaves nothing for the court but to declare the law arising from the
facts" as agreed case).

 Davis has not challenged appellees' assertion that the instant cause be treated as an
agreed case. Although the parties never agreed that the case would be tried pursuant to Rule 263
as an agreed case, neither did they imply that there were other facts as to which they would offer
proof if they so desired. The issues at trial were limited to the application of the law to the
stipulated facts. In considering all the facts, circumstances, and actions of the parties, we
conclude that while not in literal compliance with Rule 263, the instant case may be treated as an
agreed case for the purposes of determining the appropriateness of the request for findings of fact
and conclusions of law. See Cobb, 190 S.W.2d at 715; Lambda Constr., 784 S.W.2d at 125.



 C. Appropriateness of Request for Findings of Fact

 Ordinarily,



[t]he courts are without power, in the absence of a provision in the agreed
statement providing otherwise, to draw any inference, or find any facts, not
embraced in the agreement, unless, as a matter of law, such other inferences are
necessarily compelled; and the judgment of the court must only declare the law
which necessarily arises from the facts agreed upon.



Hutcherson v. Sovereign Camp, W.O.W., 251 S.W. 491, 492 (Tex. 1923) (emphasis added); see
also Cousins v. Cousins, 42 S.W.2d 1043, 1046-47 (Tex. Civ. App.--Amarillo 1931, writ ref'd)
(on rehearing) (confining trial court to facts contained in agreed statement and allowing no
additional findings). Accordingly, findings of fact and conclusions of law need not be filed
following a judgment rendered on stipulated facts. Sharyland Water Supply Corp. v. Hidalgo
County Appraisal Dist., 783 S.W.2d 297, 298 (Tex. App.--Corpus Christi 1989), aff'd, 804
S.W.2d 894 (Tex. 1991); see also Perry v. Aetna Life Ins. Co., 380 S.W.2d 868, 875 (Tex. Civ.
App.--Tyler 1964, writ ref'd n.r.e.) ("As a general rule, findings of fact do not have any place in
the trial of an agreed case.") (emphasis added); Ocean Accident & Guarantee Corp. v. Riggins,
291 S.W. 276, 278 (Tex. Civ. App.--Waco 1927, writ ref'd) (stating findings of fact have "no
office" in agreed case); cf. Wylie Indep. Sch. Dist. v. Central Educ. Agency, 488 S.W.2d 166,
168 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.) (concluding trial court correctly refused to
make findings of fact in administrative law case because only questions of law were presented);
Southwest Stone Co. v. Railroad Comm'n, 173 S.W.2d 325, 328 (Tex. Civ. App. --Austin 1943,
writ ref'd w.o.m.) (holding trial court properly refused to make findings of facts in case disposed
of by sustaining special exceptions to pleadings because pleadings stated all facts upon which trial
court ruled). If findings of fact and conclusions of law are filed in agreed cases, they will be
disregarded on appeal. Cf. Cobb, 190 S.W.2d at 715 (stating agreed statement of facts and
judgment constitute record on appeal of agreed case); Ocean Accident, 291 S.W. at 278 (stating
findings of fact in agreed case not binding on appeal).

 In the context of summary judgment, the Texas Supreme Court recently held that
a request for findings of fact and conclusions of law will not extend the appellate timetable
"[b]ecause findings of fact and conclusions of law have no place in a summary judgment
proceeding." Linwood v. NCNB Tex., 885 S.W.2d 102, 103 (Tex. 1994) (emphasis added). Our
reading of Texas case law indicates that, as in the context of summary judgment, findings of fact
generally have no place in cases based entirely on undisputed stipulated facts. See Perry, 380
S.W.2d at 875.

 Nevertheless, while findings of fact may ordinarily be inappropriate in agreed
cases, at times inferential findings beyond the agreed or stipulated facts may be necessarily
compelled by the facts as a matter of law. See Abilene Hotel Corp. v. Gill, 187 S.W.2d 708, 712-13 (Tex. Civ. App.--Waco 1945, writ ref'd w.o.m.) (on rehearing) (positing that when agreed facts
are evidentiary in nature as to an ultimate material issue, the parties intend, and in effect agree,
that trial court make findings raised by evidence in stipulated facts in order to make conclusion
on controlling issue); see also Hutcherson, 251 S.W. at 492 (providing exception for court's lack
of power to find facts in agreed cases when other inferences are compelled as a matter of law). 
We conclude that because findings of fact may be necessarily compelled by stipulated facts that
are evidentiary in nature, they will not be disregarded in every instance. See Abilene Hotel, 187
S.W.2d at 712-13 (assuming in absence of trial court's express findings of fact that trial court
found all facts raised by evidence contained in agreed statement in support of judgment). We
therefore distinguish the role of findings of fact and conclusions of law in agreed cases where
findings generally have no place from that in summary judgment cases where findings
unqualifiedly have no place. See Linwood, 885 S.W.2d at 103. We hold that while findings of
fact need not be filed in agreed cases, they may be necessary in some rare instances. However,
we cannot determine whether findings of fact and conclusions of law are necessary until we have
jurisdiction over the cause. Accordingly, since findings of fact and conclusions of law are not
always inappropriate, we conclude that a request for such extends the timetable to perfect appeals
in all agreed cases. Appellees' jurisdictional cross-point of error is overruled.



II.  Sales Taxes

 Davis contends in his second point of error that the trial court erred in applying
section 111.016 of the Tax Code ("section 111.016"), as amended effective July 21, 1987, to hold
him liable for taxes collected by JDA in 1984 because (1) the amended statute imposes a different
duty and status on a taxpayer corporation than the 1984 statute and (2) the application of the
amended statute to Davis gives it a constitutionally prohibited retroactive effect. (4) Davis
acknowledges that section 111.016, as amended in 1987, sets forth a fiduciary relationship
between the state and entities, like JDA, authorized to collect sales taxes on behalf of the state,
in which the sales tax collector holds tax receipts, the state's property, in trust for the state. See
Dixon v. State, 808 S.W.2d 721, 723 (Tex. App.--Austin 1991, writ dism'd w.o.j.). Before the
1987 amendment, however, Davis contends that section 111.016 did not mandate a trust
relationship but rather provided for a debtor-creditor relationship between the state and sales tax
collectors. Davis cites no authority in support of this position. Yet, he argues sales taxes
collected before 1987 did not become state property until remitted to the state. Davis maintains
that he cannot be liable on theories of conversion or breach of fiduciary duty when appellees had
no ownership interest in the taxes JDA collected in 1984. To hold him liable for either tort, Davis
argues the trial court retroactively applied amended section 111.016 to him in contravention of
Article I, section 16 of the Texas Constitution and section 311.022 of the Code Construction Act.

 In response, appellees contend that even in 1984 when JDA collected the sales taxes
at issue, the pre-amendment form of section 111.016 set forth a trust relationship between the state
and sales tax collectors with respect to sales tax funds collected. (5) As such, they contend JDA's
failure to remit the receipts constituted the tort of conversion for which Davis can be held jointly
liable with JDA. See id. at 723-24. Appellees argue that the amendment's scant legislative
history suggests its purpose was to clarify existing law. In addition, appellees suggest that the
structure of the Texas sales tax system establishes an agency relationship imposing duties on the
agent tax collector with respect to the principal's--the state's--property.

 No Texas case law addresses the relationship section 111.016 imposed on sales tax
collectors and the state as to sales taxes collected before 1987. Moreover, the parties indicate that
no legislative history is available to shed light on the meaning of the 1987 amendment to section
111.016. However, observing that section 111.016, located under the Tax Code chapter entitled
"Collection Procedures," applies generally to all taxes imposed by the Tax Code, we logically
look to the specific portions of the Tax Code imposing the sales tax and detailing the sales tax
scheme and manner of payment for guidance as to the relationship existing between the state and
sales tax collectors both before and after the 1987 amendment to section 111.016. See Limited
Sales, Excise, and Use Tax Act, Tex. Tax Code Ann. §§151.001-.801 (West 1992 & Supp. 1995)
(the "Act").

 Enacted in 1961 when Texas "fac[ed] the greatest financial crisis in its history,"
the sales tax was imposed to raise revenue to be used by the state for the health and welfare of all
Texans. Limited Sales, Excise and Use Tax Act, 57th Leg., 1st C.S., ch. 24, art. VIII, § 4, 1961
Tex. Gen. Laws 71, 114. An excise tax, (6) the sales tax is characterized as a transaction tax
imposed on each sale of a taxable item. Tex. Tax Code Ann. § 151.051 (West 1992); Calvert v.
Canteen Co., 371 S.W.2d 556, 558 (Tex. 1963). The seller must collect the sales tax by adding
the tax to the sales price of the taxable item; the tax is the purchaser's debt to the seller until paid. 
Tex. Tax Code Ann. § 151.052(a)(1), (2) (West 1992). Generally, sales taxes are due to the
comptroller quarterly or on or before the twentieth day of the month. Id. § 151.401(b) (West
Supp. 1995). Sales taxes paid to the state by the seller are computed based on the application of
the sales tax rate to the total receipts of taxable sales and services collected from the purchaser. 
Id. § 151.410 (West 1992). However, the taxpayer may deduct a percentage of the tax amount
due as reimbursement for the cost of collecting the taxes. Id. § 151.423. Persons failing to report
or pay taxes imposed may be subject to civil or criminal penalties. See id. §§ 151.703, .7031,
.709 (West 1992 & Supp. 1995).

 While sellers have a legal duty to collect sales taxes from purchasers, both sellers
and purchasers are liable to the state for sales taxes. Bullock v. Foley Bros. Dry Goods Corp.,
802 S.W.2d 835, 838 (Tex. App.--Austin 1990, writ denied) ("[T]he tax may be collected [by the
comptroller] from the seller or purchaser or both until the tax has been paid . . . ."); Bullock v.
Delta Indus. Constr. Co., 668 S.W.2d 502, 504 (Tex. App.--Austin 1984, no writ) (upholding
authority of state to collect sales tax from purchaser when sellers defaulted on obligations to
collect sales tax from purchaser); see also Tex. Tax Code Ann. § 151.417 (West 1992) (providing
for direct payment of sales tax by purchaser under some circumstances). Both sellers and
purchasers can therefore be characterized as taxpayers. However, the seller must also be
characterized as a tax collector, and because of this, seller and purchaser liability to the state as
taxpayers arises for differing reasons: the purchaser, as a statutory debtor to the seller but
ultimately liable to the state, owes sales tax on its purchase transaction; the seller also owes the
state the sales taxes a customer incurs because the seller must, under the state's authority, collect
those taxes. Under the Act, then, the economic burden of the tax is on the purchaser: the sales
tax will either be collected by the seller from the purchaser under the state's authority and then
remitted to the state; or, if the seller fails to bill the purchaser, the tax will be collected directly
by the state from either the seller or purchaser. (7) See Malcuit v. State, 134 B.R. 185, 187 (Bankr.
N.D. Tex. 1991) (observing that burden of sales tax is on purchaser and that seller collects it on
behalf of the state). By contrast, the seller, as collector of the sales tax paid by the purchaser,
bears the legal incidence of the tax; the seller pays a tax in the sense that it remits the tax
payments collected from the purchaser to the state.

 We conclude that even though the Act's detailed provisions for collection and
payment of sales taxes contain no express language describing the seller as an agent for the
collection of the state's taxes or providing that the taxes collected be held in trust for the state, the
Act's provisions nevertheless set forth an implicit agency-principal relationship, rather than a
debtor-creditor relationship, between sellers in their role as tax collectors and the state. Cf.
Anderson v. State, 265 N.W. 210, 212 (Wis. 1936) ("Of course any [sales tax] agent who fails
to turn over collections [to the state] by his failure becomes a debtor, but becoming a debtor does
not destroy the relation of agency."). We are inclined toward this view because of the Act's
provisions (1) allowing sellers reimbursement for expenses of collection; (2) subjecting sellers to
civil or criminal penalties for failure to report or pay taxes imposed; (3) requiring sellers to collect
sales tax from purchasers by adding the tax to the sales price; and (4) providing that the sales tax
is the purchaser's debt to the seller. See Texas Co. v. Miller, 165 F.2d 111, 114 (5th Cir. 1947)
(outlining similar factors as influential to court's determination that, under Texas law, seller of
gasoline is state's collecting agent of gasoline sales tax); see also Anderson, 265 N.W. at 212
(finding agency relationship existed since stated intent of gasoline sales tax statute was to impose
tax on motor vehicle owners, who court presumed to be gasoline purchasers). But see State v.
Marcotte, 418 A.2d 1118 (Me. 1980) (finding debtor-creditor relationship when sales tax statute
contained no express duty to segregate funds collected nor requirement that taxes be held in trust
for state and when statute expressly provided tax collected became personal debt of seller). The
tax was initially imposed to generate funds for the state's use, and thus the state, not the seller as
the intermediary sales tax collector, is the beneficiary of the tax.

 Similar agency relationships have been held to exist in other tax collector
circumstances. See Daywood v. Calvert, 478 S.W.2d 152, 155-56 (Tex. Civ. App.--Austin 1972,
writ ref'd n.r.e.) (observing that cigarette excise tax collectors are state agents and tax "is money
belonging to the state, held in trust for the state by the . . . person or firm collecting the money");
Miller, 165 F.2d at 113-14 (concluding under Texas statute imposing tax on sales of gasoline,
seller is state's collecting agency, required and authorized to collect gasoline tax from purchaser
and transmit it to the state). See generally 68 Am. Jur. 2d Sales and Use Tax, § 1 (1993) ("[T]he
seller has the statutory duty to collect the tax for the taxing jurisdiction.") (emphasis added). We
hold that because of the implicit agency relationship set forth in the Act, sales tax monies are state
funds from the moment of the seller's collection, and the seller, as the state's agent, has not only
a statutory duty but also a fiduciary duty to remit these funds to the state.

 Our conclusion finds support in bankruptcy cases, which, for the purpose of
establishing debt priority, have addressed the status of sales taxes collected in Texas before 1987
but not remitted to the state and have concluded that in the seller's hands, collected sales taxes
constitute property held in trust for the state. Under the Bankruptcy Code, a debtor is liable for
certain taxes such as income and social security taxes which are "required to be collected or
withheld." 11 U.S.C. § 507(a)(7)(C) (1988); see Rosenow v. Illinois Dep't of Revenue, 715 F.2d
277, 280 (7th Cir. 1983); see also Malcuit, 134 B.R. at 187 (emphasizing that § 507(a)(7)(C)
taxes are those required to be collected from third parties). Taxes falling under § 507(a)(7)(C)
are commonly referred to as "trust fund taxes." Malcuit, 134 B.R. at 187. Comparing the
language of § 507(a)(6)(C) to similar language in the Tax Code, bankruptcy courts have concluded
that sales taxes collected before the amendment of section 111.016 fall into the Bankruptcy Code's
trust fund taxes category for priority purposes. See In re Gulf Consol. Servs., Inc., 110 B.R. 267,
267-68 (Bankr. S.D. Tex. 1989) (holding that pre-amended version of section 111.016 required
sales taxes collected from 1980 to 1983 to be of a "trust-fund" nature); In re Avant, 110 B.R. 264,
265-66 (Bankr. W.D. Tex. 1989) (concluding sales taxes collected before 1987 pursuant to Tax
Code § 151.052 were taxes a retailer collected from third parties and were trust fund taxes); see
also Malcuit, 134 B.R. at 187-88 (including sales taxes owed by tax collector from sales tax
transactions in 1972 and 1973 as priority claim trust fund taxes under Bankruptcy Code
§ 507(a)(7)(C)); see generally In re Al Copeland Enters., Inc., 133 B.R. 837, 838 (Bankr. W.D.
Tex. 1991) (commenting that trust fund language of amended section 111.016 clarified status of
collected sales taxes as trust funds). Thus, bankruptcy courts considered sales taxes imposed by
and collected under the Tax Code to be of a "trust fund nature" before the amendment of section
111.016; now, however, as In re Al Copeland Enterprises suggests, the taxes are not merely of
a "trust fund nature," but have been expressly characterized by statute as trust funds. See id.

 In light of our conclusion that the Act sets forth an agency relationship rather than
a debtor-creditor relationship, we hold that even before the amendment of section 111.016 to
include "trust fund" language, the sales taxes collected by agent-sellers on behalf of the state,
while not expressly characterized as trust funds, were of a trust fund nature and thus were the
state's property. Accordingly, since sales taxes collected before the amendment of section
111.016 were not the seller's property but were only collected by the seller on behalf of the state,
our holding in Dixon is applicable to the instant cause to subject Davis to liability for his conduct
in actively participating in the tort of conversion through his spending of sales tax money collected
by JDA for purposes other than the payment of the taxes to appellees. See 808 S.W.2d at 724. 
The trial court therefore did not retroactively apply amended section 111.016 to Davis. The
agency relationship arising from the Act's provisions operates under both versions of section
111.016. We overrule Davis's second point of error.

 In his third and fourth points of error, Davis complains that the trial court's
judgment awards to appellees were erroneous because no evidence was presented to support the
judgment amounts. In their second cross-point of error, appellees argue that the trial court's
judgment amounts were erroneous because stipulated evidence established that appellees were
damaged in amounts greater than those awarded.

 The stipulated "payment agreement" in evidence indicates JDA originally owed
appellees $190,737.12 in sales taxes. Of this amount, state sales taxes totaled $134,350.43, city
sales taxes totaled $28,914.43, and transit authority sales taxes totaled $27,472.26. The stipulated
"payment agreement" additionally indicates that by February 12, 1986, JDA owed appellees a
total of $217,641.00 in sales taxes, including interest, for the collection period through December
31, 1984. Of this amount, state sales taxes plus interest totaled $154,457.98, city sales taxes plus
interest totaled $32,078.80, and transit authority sales taxes plus interest totaled $31,104.22. 
None of the stipulated amounts equal the total judgment award of $401,821.75.

 Appellees assert that the judgment award properly includes interest accruing from
1986 up to the day of judgment as well as penalties for JDA's failure to pay. See Tex. Tax Code
Ann. § 111.016 (holding tax collector liable for full amount of tax collected as well as accrued
penalties and interest on amount collected). Even if appellees are correct, no stipulated evidence
at trial specifies interest owed by JDA after February 12, 1986, or any penalties owed. In fact,
the stipulated "payment agreement" indicates that while interest would continue to accrue at
statutory rates, all penalties had been waived. As such, the judgment award exceeds the stipulated
taxes due. Accordingly, we overrule appellees' second cross-point of error and sustain Davis's
third and fourth points of error.

 Davis's first point of error argues that the trial court erroneously relied on and cited
an unpublished opinion as authority for its judgment. However, the final judgment included in
the record does not cite to any authority. Regardless of the authority upon which the trial court
relied, we have concluded the trial court's judgment of Davis's liability is proper under Dixon. 
See 808 S.W.2d at 724. We overrule Davis's first point of error.



CONCLUSION


 Because the amount of damages awarded in the judgment is incorrect, we reverse
the trial court's judgment. We remand this cause to the trial court for further proceedings to
determine the proper amount recoverable by appellees and to render judgment in accordance with
this opinion. 



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Jones

Reversed and Remanded

Filed: August 16, 1995

Publish
1.   Appellees originally filed suit against Jim Davis Leasing, Inc., Jim Davis Oil Field
Equipment, Inc., Jim Davis Auctioneers, Inc., James W. Davis, and Lottie Tittle. 
Appellees' case against Davis and Tittle was severed, and Tittle was subsequently
nonsuited. Thirteen Texas cities in addition to the three cities party to this appeal were
plaintiffs in the original and severed actions. 
2.   In further response to the State's argument that the instant case cannot be
considered a "trial" within the meaning of Rule 296, we note that Rule 263 is categorized
under the general heading, "The Trial." 
3.   Rule 263 also requires the court to sign and certify the agreed statement as correct. 
Tex. R. Civ. P. 263.
4.   The statute as it existed in 1984 provided: "Any person who receives or collects a
tax or any money represented to be a tax from another person is liable to the state for the
full amount of the taxes plus any accrued penalties and interest on the taxes." Act of May
31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1490, 1504 (Tex. Tax Code
Ann. § 111.016, since amended). The current statute, as amended in 1987, provides: 


Any person who receives or collects a tax or any money represented to be a tax
from another person holds the amount so collected in trust for the benefit of the
state and is liable to the state for the full amount collected plus any accrued
penalties and interest on the amount collected.

Tex. Tax Code Ann. § 111.016 (West 1992) (emphasis added). 
5.   Appellees also argue that Davis is personally liable for the tax funds because the Tax
Code imposes individual liability on "[a]ny person who receives or collects a tax." Tex.
Tax Code Ann. § 111.016 (West 1992). Since we dispose of this case on other grounds,
we do not reach appellees' alternate argument. 
6.   An excise tax is "[a] tax on the manufacture, sale, or use of goods." Black's Law
Dictionary 563 (6th ed. 1990).
7.   If the state collects the tax from the seller, the seller has a cause of action against
the purchaser to recover the tax it should have originally collected from the purchaser. 
See Tex. Tax Code Ann. § 151.052(a)(3); Reaves & Becker Co. v. Wilkes Co., 392 S.W.2d
379, 380 (Tex. Civ. App.--Austin 1965, writ dism'd) (holding such an action arises from
seller's duty imposed by law to collect sales tax from purchasers).